FILED

JAN 1 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARNELL STANLEY - Pro-Se          :
No. 08619-007
F.C.I. Allenwood
P.O. Box 2000                     :
White Deer, PA  17887
          Plaintiff

                                  :

          v.                      :          CIVIL RIGHTS COMPLAINT

UNITED STATES OF AMERICA, et,al   :
                                             CASE NUMBER  1:06CV00038
          and
                                             JUDGE: Unassigned
ANTHONY WILLIAMS, et,al           :
MAYOR FOR THE DISTRICT OF                    DECK TYPE: Pro se General Civil
COLUMBIA, OFFICE OF THE
SECRETARY, GLADYS HERRING                    DATE STAMP: 01/11/2006
441 FOURTH STREET N.W.
WASHINGTON, D.C. 20001
Being sued in his Individual
Capacity                                     **JURY TRIAL DEMANDED**

          and

MR. ODIE WASHINGTON et,al
DIRECTOR FOR THE DISTRICT OF
COLUMBIA DEPARTMENT OF CORR. et.al
1923 VERMONT AVENUE, N.W 20001
Being sued in his Individual
Capacity

          and

MRS. KATHY PATTERSON, CHAIRMAN OF THE
DISTRICT OF COLUMBIA COMMITTE OF
JUDICIARY AFFAIRS, et,al
ONE JUDICIARY SQUIRE
441 FOURTH STREET, N.W.
WASHINGTON, D.C.  20001
Being sued in her Individual
Capacity

          and

ELWOOD YORK, DIRECTOR OF EXTERNAL
CONFINEMENT, et,al
DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS
1923 VERMONT AVENUE, N.W.
WASHINGTON, D.C. 20001
Being sued in his Individual Capacity

JURY
ACTION

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DEC 1 2 2005

RECEIVED

(  1  )   CONTINUED ON NEXT PAGE ......

DR. ELEZA TAYLOR, DIRECTOR OF
HEALTH SERVICES FOR THE DISTRICT
OF COLUMBIA DEPARTMENT OF CORRECTIONS, et,al
1923 VERMONT AVENUE, N.W. 20001
Being sued in her Individual
Capacity

      and

ALBERTO GONZALEZ, UNITED STATES ATTORNEY
GENERAL, et,al
UNITED STATES DEPARTMENT OF JUSTICE, et,al
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20001
Being sued in his Individual Capacity

      and

HULON WILLIS, CONTRACT MONITOR FOR
THE DISTRICT OF COLUMBIA DEPARTMENT
OF CORRECTIONS
1923 VERMONT AVENUE, N.W.
WASHINGTON, D.C. 20001
Being sued in his Individual Capacity

      and

ALL THE ABOVE NAMED DEFENDANTS
ARE ALL DISTRICT OF COLUMBIA
DEFENDANTS.

THE VIRGINIA DEFENDANTS ARE:

JAMES S. GILMORE,III, GOVERNOR OF VIRGINIA, et,al
OFFICE OF THE GOVERNOR OF VIRGINIA
STATE CAPITAL, THIRD FLOOR
RICHMOND, VIRGINIA 23219
Being sued in his Individual Capacity

     and

RONALD ANGELONE, DIRECTOR OF THE DEPARTMENT
OF CORRECTIONS, et,al
STATE OF VIRGINIA DEPARTMENT OF CORRECTIONS
6900 ATMORE DRIVE
RICHMOND, VIRGINIA 23225
Being sued in his Indivdual Capacity

EDDIE L. PEARSON, WARDEN, et,al
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA  23891

     and

JAMILLA F. BURNEY, ASSISTANT WARDEN
OF HOUSING AND PROGRAMS, et,al
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA  23891

     and

WANDA ROLLINS, OPERATIONS OFFICER
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA  23891

     and

R. WHITE, TREATMENT SPECIALIST
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA  23891

     and

GENE M. JOHNSON, DEPUTY DIRECTOR
OF OPERATIONS, et,al
157 N. MAIN STREET
SUIT- C
SUFFOLK, VIRGINIA 23434

     and

K. TURNER, LIEUTENANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA  23891

     and

D. KRIIGEL, TREATMENT SPECIALIST (TPS)
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA  23891


ALL THE ABOVE NAMED DEFENDANTS
ARE BEING SUED IN THIER INDIVIDUAL
CAPACITY

E.T. TURNER, UNIT MANAGER
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

C. MATHEWS, REHABILITATION
COUNSELOR
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

BUFORD T. YATES, DIRECTOR OF
GENERAL ACCOUNTING:
M.C.I. WORLD COMM, INC
500 CLINTON DRIVE
CLINTON, MS 39056

     and

JANICE TURNER, INSTITUTIONAL
OMBUDSMAN
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

VIRGINIA BULLOCK, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

GILLIAN, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

JENKINS, CAPTAIN
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

BROWN, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

THOMAS, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

HARREL, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

L. ELLIS, MEDICAL ASSISTANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY VIRGINIA 23891

     and

HOUSTON, CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

HEWS, CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

CARLTON, CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

(ALL THE ABOVE NAMED DEFENDANTS
ARE BEING SUED IN THIER INDIVIDUAL
CAPACITY.

LIPTROT, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

HARRIS, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

JAMES T. APPEL, MEDICAL
ASSISTANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

BEN SAMORIA, MEDICAL ASSISTANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRIGNIA 23891

     and

DAILY (aka) Mrs. MUHAMMAD
CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

WILLIAMS, CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

     and

PAUL HILL, ASSISTANT DIRECTOR
FOR FOOD SERVICE
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

( 4 ) ___/ CONTINUED ON NEXT PAGE .....

COAKLEY, CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

and

RUFUS FLEMMING, EASTERN
DISTRICT DIRACTOR
157 N. MAIN STREET
SUIT - C
SUFFOLK, VIRGINIA 23434

and

LANGFORD, ASSISTANT DIRECTOR
FOR FOOD SERVICE
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

and

BENJAMIN ULEP, DIRECTOR OF
HEALTH SERVICE
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

and

CLARK, CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

and

CUCCIO, CORPORAL
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

and

JAMES T. HOLMES, DIRECTOR FOR
FOOD SERVICE
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

D. EVERETT, WARDEN OF OPERATIONS
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

and

EDWARD MORRIS, DEPUTY DIRECTOR
157 N. MAIN SRTEET
SUIT - C
SUFFOLK, VIRGINIA 23434

and

RITTER, SERGEANT
SUSSEX II STATE PRISON
24427 MUSSEL WHITE DRIVE
WAVERLY, VIRGINIA 23891

and

M.C.I. WORLD COMM, INC.
500 CLINTON, COURT. DRIVE
CLINTON, MS, 39056

and

BERNARD J. EBBERS, CHIEF EXECUTIVE
M.C.I. WORLD COMM, INC
500 CLINTON DRIVE
CLINTON, MS 36056

and

SCOTT D. SULLIVAN, FORMER CHIEF
FINANCIAL OFFICER
M.C.I. WORLD COMM, INC
500 CLINTON DRIVE
CLINTON, MS 36056

and

DAVID F. MYERS, FORMER CONTROLLER
M.C.I. WORLD COMM, INC
500 CLINTON DRIVE
CLINTON, MS 36056

(ALL THE ABOVE NAMED DEFENDANTS
ARE BEING SUED IN THIER INDIVIDUAL
CAPACITIES:)

(  5  ) __/  CONTINUED ON NEXT PAGE .....

## PARTIES

1.  Plaintiff, Darnell Stanley is a 48 Year ol Life time resident
of the District of Columbia.  Plaintiff was subsequently convicted
and Sentenced by the District of Columbia Superior Court and there-
after sent to the District of Columbia Central Detention Facility
into the custody of the United States Attorney General by the Honor-
able Judge Ricardo Urbina as a prisoner and given a state number of
(190-054).  Plaintiff contends that during all times mentioned in
this complaint plaintiff was transferred from the Central Detention
Facility at 1901 D. Street S.E., Washington, D.C.,  To the Lorton
Central Facility and on January 28, 1999 was again transfered under
duress to the Virginia State Prison System at Sussex II State Prison
in Waverly, Virginia by the authority of the Interstate Corrections
Act, Pursuant to the Interstate Agreement between the District of
Columbia and the Virginia Department of Corrections whom at all times
relevant hereto, was housing Plaintiff at it's facility at the Sussex
II State Prison in Waverly, Virginia.  At all times relevant the Dis-
trict of Columbia maintained Jursidiction over the Plaintiff while
being housed in the Virginia Department of Corrections Facility.

> Mr. Darnell Stanley arrived at the Sussex
> II State Prison on January 28, 1999 and
> remained there untill October, 2002

2.  Defendant, United States of America is a Federal Corporation.,
Pursuant to 28 U.S.C. § 3002 (15), ch. 176 endowed with the capacity
to sue and be sued,  The United States being the defendant who is
detaining Plaintiff is to provide and assure that the Plaintiff is
provided proper treatment, care, shelter, safety, rehabilitation,
reformation while he remains a prisoner committed to the custody of
the D.C. Department of Corrections and the Attorney General.  This
defendant is being sued for Punitive, Compensatory, Exemplary, damages
in it's individual Capacity.

3.   Defendant, District of Columbia is a unit Government a "Person"
under 42 U.S.C. § 1983.  Defendant District of Columbia operates the

District of Columbia Department of Corrections as a agency of the
Government Pursuant to D.C. Code § 24-442, the District of Columbia
is to provide the Proper Care, treatment, safety, Reformation, re-
habilitation to the Plaintiff and all the District of Columbia Pri-
soners committed to the custody of the District of Columbia and
transfered under contract to the Sussex II State Prison Pursuant to
the Interstate Corrections Compact Pursuant to D.C. Code § 24-1001
Article III. (a)(2)(3), Article IV. (a)(c)(d)(e) (f)(h).  The defendant
is bieng sued in it's individual Capacity.

4.  Defendant, Anthony Williams is the Mayor of the District of Colum-
bia.  As the Mayor, he is responsible for the monitoring of the Dis-
trict of Columbia Department of Corrections Personel and employee's as
well as the individual's involved in the signing of the Interstate
agreement contract signed between the District of Columbia and the
Virginia Department of Corrections whom at all times mentioned in this
complaint were housing the plaintiff and twelve to Fifteen hundred
other District of Columbia Prisoners,  Pursuant to D.C. Code 24-1002
under the additional duties of the Mayor:  Which States:

> The Mayor shall do all things necessary and incidental to the
> execution of the compacy. (May 10, 1998, D.C. Law 7-230, 335
> DCR 7736; May 8, 1990 D.C. Law 8-122, § 337 DCR 30). cited in
> Jackson v District of Cloumbia, 89 F. Supp, 2d 48 (D.D.C. 2000)

Furthermore, Pursuant to D.C. Code § 24-468. Designation of Mayor
as representative of Attorney General.

  The Attorney General of  the United states may, in order to carry
out the purposees of this subchapter, designate the Mayor as his
authorized representative to perform the functions vested in him by
§ 24-425.
He is being sued for Punitve, compensatory, Exemplary damages in his
Individual Capacity.

5.  Defendant, Oddie Washington, is the Director of the D.C. Department of Corrections as director, He is responsible for the monitoring of the facilities which the D.C. department of Corrections contract it's Prisoners out too.  He is also responsible for the care, safety, custody, Reformation, Rehabilitation which is to be provided to the District of Columbia Prisoners.  He is also responsible for establishing policies, Proceedures, training,and the overall supervision of department staff.  He is being sued for Punitive, Compensatory, Exemplary damages in his individual capacity.

6.  Defendant, Elwood York, is the Director of External Confines and Monitoring for the District of Columbia Department of Corrections. He is responsible for assuring that Prisoners committed to the District of Columbia Department of Corrections or transfered to out of state facilities are provided with the proper care, custody, treatment, safety, reformation, rehabilitation, while being housed in contract facilities.  He is being sued for Punitive, Exempalary, Compensatory damages in his Individual Capacity.

7.  Defendant, Dr. Eliza Taylor, is the Director of Health Services for the District of Columbia Department of Corrections.  As the director she is responsible for the Provision of medical care provided to Priosners committed to the custody and care of the District of Columbia Department ofCorrections and out of State facilities she is also responsible for the care. safety, treatment, custody, rehabilitation, reformation.  He is being sued for Punitive, Exemplary, Compensatory damages in his individual capacity.

8.  Defendant, Hulon Willis is a contract monitor for the District of Columbia Department of Corrections. He is responsible for assuring that the prisoners committed to the cre and custody of the Department of Corrections and while housed in the Sussex II State Prison in Waverly, Virginia are provided with the proper care, treatment, safety, reformation, rehabilitation and not sit idly by as the District of Columbia Prisoners rights are violated while housed at the Sussex II

State Prison. He is being sued for Punitive, Exemplary, Compensatory
Dameges in his Individual Capacity.

9.  Defendant, Anthony Gonzalez, is the United States Attorney General
for the United States of America. As the Attorney General he is res-
ponsible for the care, safety, custody, treatment, reformetion, re-
habilitation of prisoners committed to the custody of the District of
Columbia Department of Corrections as well as the Federal Bureau of
Prisons (BOP) Pursuant to U.S.C.A. Title 18 §§ 4001.  Limitation of
detention; Control of Prisons:

(a) No citizen shall be imprisoned or otherwise detained by the United
States except pursuant to an Act fo Congress.

(b)(1)  The control and management of Federal and Correctional In-
stitutions, except military or naval Institutions, shall be vested
in the Attorney General, who shall promulgate rules for the government
thereof, and appoint all necessary officers and employees in accordance
with the Civil-Service Laws, The Classification Act, as amended and
the applicable regulations.

(2)   The Attorney General may establish and conduct Industries,
farms and other activities and classify the inmates; and provide
for thier proper government, discipline, treatment, care, reha-
bilitation, and reformation,  Furthermore, Pursuant to CFR. Part
545, 28 CFR, Part 545, CFR, Part 549, 28 CFR. Part 552.  The Attorney
General may establish and conduct Industries, farms and other acti-
vities and classify the inmates; and provide for thier care, rehabil-
itation and reformation.

10.  Defendant, kathy Patterson is the chairman of the District of
Columbia Committe on Oversight Judiciary.  She is responsible for the
oversight responsibility for the Department of Corrections.  She is
responsible for the care, custody, safety, treatment, rehabilitation,
reformation, of the priosners in the District of Columbia and contract
facilities. She is being sued for Punitive, Exemplary, Compensatory,
damages in her individual Capacity.

(  9  )  __/ CONTINUED ON NEXT PAGE .....

14.  Defendant, David B. Everett is the Warden of Operations and
Support.  He is responsible for all security proceedures which in-
clude the use of force at the Sussex II State Prison.  He is res-
ponsible for the Supervision and training of staff at Sussex II,
State Prison, He is also responsible for the safety, custody sub-
sistence, rehabilitation, reformation, treatment of Prisoners being
housed at the Sussex II facility,  He is being sued for Punitive,
Compensatory, Exemplary damages in his individual capacity.

151  Defendant, Edward Morris is the Deputy Director of the Virginia
Department of Corrections.  As Deputy Director, He is responsible for
the safety, care, custody, reformation, subsistence, rehabilitation,
and to ensure that a adequate and effective grievance system is in
effect for the Prisoner of the District of Columbia to address thier
grievance's while housed in the Virginia facility. He is also respon-
sible for establishing Policies and Proceedures, training Prison staff
and the overall Supervison of Sussex II State Prison employee's.  He
is being sued for Compensatory, Exemplary, Punitive damages and injunc-
tive relief in his individual capacity.

16.  Defendant, Rufus Flemming is the Eastern District Director for the
Virginia Department of Corrections,  As Eastern District Director,  He
is responsible for the care, safety, subsistence, rehabilitation, refo-
rmation, treatment of prisoners committed to the custody of the District
of Columbia Department of Corrections under the <u>Interstate Corrections</u>
<u>Compact</u>: D.C. Code §§ 24-1002 and being housed at the Sussex II State
Prison in Waverly, Virginia.  He is also responsible for establishing
Policies and Procedure's, the training of overall staff employees.  He
is being sued for Punitive, Compensatory, Exemplary damages in his in-
dividual capacity.

17.  Defendant, James S. Gilmore is the Governor of the State of Virgi-
nia,  As Governor, He is responsible for the care, custody, subsistence,
safety, reformation, rehabilitation, of prisoners being housed in the
State of Virginia under Contract from a sending State such as the Dis-
trict of Columbia.  He responsible for and has the duties simular to
those of the United States President, partly Executive, Legislative,

( 11 ) __/  CONTINUED ON NEXT PAGE ......

18. Defendant, Gene M. Johnson is the Duputy Director, As the Division of Operations for the Virginai Department of Corrections. He is responsible for the care, custody, safety, subsistence, reformation, rehabilitation for the District of Columbia prisoners being housed at the Sussex II State Prison, He is responsible for establishing Policies and Proceedures for the Virginia Department of Corrections and training and the overall Supervision of staff. He is being sued for Punitive, Compensatory, Exemplary damages in his individual capacity.

19. Defendant, James A. Holmes is the Director of Food Service, for the Virginia Department of Corrections. As Director, He is responsible for the care, safety, custody, subsistence, reformation, rehabilitation, of the District of Columbia Prisoners being housed at the Sussex II State Prison. He is also responsible for establishing Policies, proceedures, training of culinary staff and Prisoners who are employed in the kitchen at the Sussex II State Prison. He is also responsible for the Religious Diet preparation, and ordering of (Kosher) foods for the Common fair diets, all the overall supplies, Food, and Preparation, the overall ordering for general Population food items, Inmate pay and multiple other duties and responsibilities. He is being sued for Punitive, Compensatory, Exemplary damages in his individual capacity.

20. Defendant, Paul Hill is the assistant Director for the Sussex II State Prison Culinary Department. As assistant Director, He is responsible for the care, safety, custody, subsistence, rehabilitation, reformation, treatment of the District of Columbia Prisoners transfered to Virginia Pursuan to the Interstate Agreement D.C. Code §§ 24-1002. He is responsible for establishing, rules, Policies, and Proceedures, Training of Kitchen staff, Prison Personel and Prison Inmate Staff. He is also responsible for the Religious diet preparation of (Kosher) halal food for the Common Fare diet as well as the ordering and Preperation for the general Population meals as well as a number of other duties and responsibilities. He is being sued for Punitive, Compensatory, Exemplary damages in his Individual Capacity.

21. Defendant, Wanda Rollins is the Operations Officer for the Virginia Department of Corrections, As the Operations officer, She is responsible for the care, custody, safety, subsistance, treatment, rehabilitation,

( 12 ) __/ CONTINUED ON NEXT PAGE .......

for the transfered District of Columbia prisoners being housed at the
Sussex II State Prison.  She is also responsible for the overall managment,
establishing policies and proceedures for the Virginia department
of Corrections and the training of staff as well as Supervisory duties
of the department staff, Inmate discipline and also investigating Informal
complaints (grievances) filed by prisoners.  She is being sued for
Punitive, Compensatory, Exemplary damages in her Individual capacity.

22.  Defendant, Janice Turner is the Institutional Ombudsman for the
Virginia Department of Corrections.  As Institutional Ombudsman,  She
is responsible for the care, custody,safety, treatment, Subsistance,
reformation, rehabilitation, of the District of Columbia Prisoners while
housed at the Sussex II State Prison,  She is responsible for the Level
II grivance forms filed by prisoners.  She is also responsible for investigating
Incidents concerning Institutional complaints by inmates. She
is being sued for Punitive, Compensatory, Exemplary damages in herindividual
capacity.

23.  Defendant, D. Kriigel is the (TSP) Specialist for the Virginia Department
of Corrections.  As the treatment specialist.  She is responsible
for the daily scheduling of Prisoners programs and Appointments for the
law library and the Institutional Attorney, Visiting lists, and overall
management of the treatment (TPS).  She is also responsible for maintaining
adequate legal materials, consisting of Books, case law, the hiring
of Law library aids.  She is being sued for Punitive, Compensatory, Exemplary
damages in her individiual capacity.

24.  Defendant, E.T. Turner is the Unit Manager for Sussex II State Prison.
as unit manager he is responsible for the care, custody, safety, Subsistance,
treatment, rehabilitation, reformation, of all the District of
Columbia Prisoners being housed at the Sussex II State Prison Pursuant
to D.C. Code §§ 24-1002. Interstate Agreement:  Mr. Turner was directly
responsible for the Prisoners housed in housing unit One where he had a
variety of job duties as well as inmates Personal and family issues.   He
is being sued for Punitive, Compensatory, Exemplary damages in his Individual
capacity

( 13 ) __/ CONTINUED ON NEXT PAGE ........

25. Defendant, K. Turner is a Lieutenant employed by the Virginia Department of Corrections. As a Staff Supervisor, He is responsible for the care, custody, Safety, treatment, rehabilitation, reformation, and subsistence of the District of Columbia prisoners being housed at the Sussex II State Prison. Lieutenat Turner was assigned too housing unit One (1) during all times mentioned in this complaint. He is responsible for the overall supervision of Correctional Staff and Inmates housed in Unit one. He is also responsible for the training, Supervision and enforcing DOP and IOP rules and regulations Policies and proceedures. He is being sued for Punitive, compensatory, Exemplary damages in his Individual capacity.

26. Defendant, R. White is the Treatment Specialist (TPS) for the Virginia Department of Corrections. As the treatment Specialist, He is responsible for scheduling Religious Services, establishing Religious programs, Religious Common Fare diet, Appointing a Religious Coordinator from the outside of the Institution, and He's responsible for determining arbitrarily who can attend the Friday Religious service for the Muslim community . He is being sued for Punitive, Compensatory, Exemplary damages in his individual Capacity.

27. Defendant, C. Matthews is the Rehabilitation counselor, for the Virginia Department of Corrections. As the rehabilitation counselor she is responsible for the care, custody, safety, subsistence, rehabilitation, reformation of the District of Columbia prisoners being housed at the Sussex II State Prison. She is also responsible for assisting inmates assigned to her case load for Institutional Issues and family problems, Emergency's, Institutional records, Photo copying Legal material, and a host of otherduties as a rehabilitation counselor. She is being sued for Punitive, Compensatory, Exemplary, damages in her individual capacity.

28. Defendant, Thomas, Gillian, Brown, Bullock, Liptrot are all employed as Sergeants for the Virginia Department of Corrections the are all responsible for the care, safety, custody, subsistence, reformation, rehabilitation, treatment of the Distric to Columbia Prisoners housed at

(14) __/ CONTINUED ON NEXT PAGE ..........

Sussex II. They are also responsible for enforcing Policies, transportation of Prisoners from the Lorton Correctional Complex to Sussex II State Prison, They are also responsible for enforcing Policies, training, and Supervision of staff at Sussex II State Prison. They are being sued for Punitive and Compensatory, Exemplary, damages in thier individual capacity.

29. Defendant, Coakley, Hews, Clark, Houston, Dailey (aka) Mrs. Muhammad are all corporals for the Virginia Department of Corrections they are all responsible for the care, custody, safety, subsistence, reformation, rehabilitation, treatment of prisoners housed at the Sussex II State Prison transfered from the District of Columbia. They are all responsible for enforcing policies, and on a daily basis maintaining housing unit pods seperate units inside a housing unit and the Medical unit and transportation to Medical and a host of other job duties. They are being sued for Punitive, Compensatory, Exemplary, damages in thier individual capacity.

30. Defendants, Samoria, Ellis, Appel are all registered nurse (s) Contracted to the Virginia Department of Corrections. As registered nurse (s) thier responsibility is the assesment of medical treatment and care, Scheduling appointments, examinations, and administering injections, dispensing medications, charging medical Co-payments for medical examinations and treatment, Passing out the Prosthesis equipment these nurse (s) are who prisoners has to convince that they need medical treatment before they can be seen by a Doctor and regardless of what your condition is you are forced to pay a ( 5.00 ) payment fee just to be seen by a nurse. They are being sued for Punitive, Compensatory, Exemplary damages in thier individual capacity.

31. Defendants, Dr. Benjamin Ulep is the Director of health Service for the Virginia Department of Corrections. As the Director, he is responsible for the medical care provision provided to the District of Columbia Prisoners housed at the Sussex II State Prison. He is also responsible for medical exams, Eye care, Training of medical Staff and the overall Supervision of the Medical department and it's employee's. He is being sued for Punitive, Compensatory, Exemplary, damages in his individual capacity.

(15) __/ CONTINUED ON NEXT PAGE .........

37.    Defendant, Bernard J Ebbers, is the Chief Executive for M.C.I. World Comm Inc. As the chief executive he is responsible for the overal business transations with large contracts such as the contract with the Virginia department of Corrections. He is also responsible for the overal payment plans, contracts, charges and over charges of inmates and tier family members who were forced under duress to use the Phone system. He is being sued for  Punitive, Compensatory, Exemplary, damages in his Individual Capacity.

38.    Defendant, Scott D. Sullivan, is the Chief Financial Officer for M.C.I.  World comm. As the Chief Financial Officer he is responsible for the financial aspect of the Company's business dealings with the contracts excepted for thier companys service. He is also responsible for the charges, contracts, and Billing of clients. He is being sued for Punitive, Compensatory, Exemplary, damages in his Individual capacity.

39.    Defendant, David F. Myers, was the former controller for the M.C.I. Word Comm, Inc. As the Controller he is responsible for controling numerious job functions and played a major part in the accounting for intentionally over billing customers. He is also responsible for charges, Contracts, and billing of clients. He is being sued for Punitive, compensatory, Exemplary, damages in his individual capacity and official capacity.

I.  CIVIL RIGHTS COMPLAINT WITH A JURY DEMAND:

PRELIMANARY STATEMENT:

1.  This is a 42 U.S.C. §§ 1983 Civil Rights complaint filed by Darnell
Stanley, a life time resident of the District of Columbia subsequently
a District of Columbia Superior Court Offender.  Whom at all times men-
tioned in this complaint was housed at the Sussex II State Prison in
Waverly, Virginia Pursuant to D.C. Code §§ 24-1001 and 24-1002. Plaintiff
was transfered from the Central Lorton Facility in Lorton, Virginia Pur-
suant to the Interstate Corrections Compact Agreement under the custody
of the District of Columbia Department of Corrections.

2.  Plaintiff is filing this civil Complaint for Punitive, Compensatory,
Exemplary damages Pursuant to 42 U.S.C. §§ 1983.  The Plaintiff was
housed at the Sussex II State Prison Facility for a total of three years.

3.  Plaintiff is alleging the Intentional and deliberate indifference
of the defendants to deny plaintiff his Constitutional Right to freedom
of religion and the right to practice his Religious belief without undo
burden, the unnecessary use of excessive force, Intentional denial of
adequate medical care and treatment, denial of access to the court, denial
of access to the Law Library, denial of adequate eye care, Denial of the
right to refuse treatment which was known to be harmful and not mandated
by the Corrections Compact Act between the District of Columbia and Vir-
ginia, Crual and Unusual Punishment, excessive use of verbal and Physical
abuse by Correctional Staff, the intentional failure of District of Colum-
bia official and Virginia Supervisory Officials to act to prevent abuse,
the use of retaliation and retlitory tactic's, Sexual Harrasment by staff,
the intentional denial of basic human decency and needs all in violation
of Plaintiff's Equal Protection and Due process rights of the Law.   In
violation of the First, Eighth, Sixth, Amendments and rights under the
United States Constitutional Mandate.

4.  Plaintiff is also alleging the Tort of Assault and Battery and
Medical negligence.

( 17 )

II.                              JURISDICTION

5.   The Court has jurisdiction and Supplemental juristiction under
the Interstate Corrections Compact, D.C. Code title 24- 1001 thru
1002; et Seq, Article IV (c)(e)(h) and D.C. Code Title §§ 24-425,
§§ 24-442 and 42 U.S.C. §§ 1997 (e)(a); 18 U.S.C. § 3626 (a)(2)
Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202,
and 42 U.S.C. §§ 1331 (a) and 1343 (b), and §§ 13-423 (a)(1)(2)(3)(4)


FIRST CAUSE OF ACTION:

A.   RELIGIOUS DISCRIMINATION AND PERSECUTION:

37. Paragraph 1-37 are incorporated by reference as re alleged and
re-stated.

38.  Plaintiff, herein named is a practicing Sunni Muslim and has been
a sincere adherent to the Islamic faith and belief for the past (40)
Forty years.  On or about December 10, 1999,  Plaintiff was singled
out and personally informed by the defendents E.T. Turner, and Bullock
that plaintiff was to cut his hair and shave his beard, and become in
compliance with the new grooming standards and policy set forth in the
new Virginia State Operating Proceedure 864.  Which established new
requirements for hair lengh and style for convicted (Virginia State)
Prisoners convicted in the State of Virginia,  This Policy required
that all facial hair worn by male Prisoners be removed if not willingly
then by force or under any other means necessary.

39.  Plaintiff, asserts that he is a District of Columbia Prisoner and
a Practicing (Sunni) Muslim being housed in the State of Virginia Dep-
artment of Corrections Pursuant to the Interstate Agreement Contract,
which does not authorize the State of Virginia to subject plaintiff
to the grooming standards of it's convicted Prisoners this particular
policy (864) was not mentioned in the Interstate Agreement signed bet-
ween the District of Columbia and Virginia before or after transfere to
Virginia,  There again was no written Policy that the District of Col-
umbia prisoners would be subjected to shave thier facial hair or be
subjected to a grooming Policy which would subject them to Crual and

Unusual punishment which placed a burden on Plaintiff's rights to Prac-
tice his religious belief and tenents with undo-burdens and duress.

40.  Plaintiff, was forced under threats of segregation, Loss of can-
teen, visiting priviledges, loss of good time, and acts of Physical
and mental force to attempt to force plaintiff to shave his beard and
cut his hair which plaintiff had been growing for the past eight years
before and after entering the District of Columbia Department of Corr-
ections or the Virginia Department of Corrections.

41.  Plaintiff's, religious tenents requir the wearing of the beard
and to trim the mustach, and if anyone grows a grey hair in Islam it
will be a source of light for him on the day of resurrection, Also the
Rasool "Prophet Mumammad" is reported as saying: <u>He who has hair should
honor it</u>. Therefore forcing plaintiff after he has explained to the de-
fendants how forcing him to cut his hair or shave is a burden upon his
religious belief under duress against (Allah's) commands to his prophet
Muhammad, forcing plaintiff to shame himself and sining against (Allah)
and his commands are in direct violation of Plaintiff's first amendment
right to practice his religious belief and tenents without undo burdens.

42.  Defendants, Pearson, Willis, Everett, White, Bullock, E.T. Turner,
J. Turner, Johnson, Brown, Rollins, York, Flemming, Mathews, Burney,
Muhammed, (aka) Dailey, Washington, Gonzalez, District of Columbia,
Williams, Patterson, Gilmore, Morris, K. Turner, State of Virginia,
all the above named defendants have denied plaintiff his rights under
the First Amendment to Practice his religious belief and expression and
deny plaintiff the right to worship without being harrassed, Threatened,
or under duress these defendants have infringed upon plaintiff's relig-
ious belief's and tenents under Islam.

43.  The defendant, actions or in-actions of defendants, Angelone,
Pearson, Willis, Everett, White, Bullock, E.T. Turner, Johnson, Brown,
Rollins, York, Flemming, Mathews, Gilmore, Burney, Muhammed, Washington,
Gonzalez, District of Columbia, Williams, Morris, K. Turner, all of the
above defendants have worked a deprevation upon plaintiff in contrvention
of the First Amendment,  Virginia Bill of Rights. Article 1 §§ 16 ...

( 19 )

as those rights are incorporated in the religious Freedom Restoration Act of 1993.  42 U.S.C. §§ 2000 bb (P.C. 103 - 41) as well as Article IV (e)(h) and D.C. Code §§ 1001.

44.  Plaintiff, also asserts and contend that since January 28, 1999. He has been denied by the defendants Angelone, Gilmore, Pearson, Willis, Everrett, White, E.T. Turner, J. Turner, Johnson, Burney, with the Virginia State Policy and practice of forbiding the plaintiff and all practicing Sunni Muslims housed in the Sussex II State Prison pursuant to the Interstate Agreement between the District of Columbia and Virginia to house the District of Columbia Prisoners under D.C. Code §§ 24-1001 and 1002, and D.C. Code 24-425, 24-442.  By denying me and other simular situated muslims the right the adhere to the mandatory tenent of Islam to attend the Friday Jum'ah prayer by all male muslims of age and of sound mind and the use of a Discriminatory process of intentionally hindering me from worshiping as prescribed by (Allah) in the Holy Quran as well as the intentional denial of the defendants to hinder me from performing the mandatory Congregational Salat during the Friday Jum'ah prayer, The defendant's also discriminated against the muslim community by not allowing us to be provided with a muslim religious volunteer to enter the institution as granted all other religious groups and the discriminatory process of not providing a adequate room large enough to accommedate the muslim community to worship and Prostrate in Prayer, As well as the intentional denial of a adequate time for the muslims who were allowed to attend the Friday Jum'ah to perform the (Ghusl) which is a mandatory complete (Bath) which we were not informed that we were on the list untill the last minute and was rushed out the unit because Sussex II State Prison was on Controlled movement and we were escorted every where thruout the Prison, also the denial of adequate and Halal or Khosher foods for the month fo Rahmadan in accord with the Islamic dietary requirements.

45.  Defendants, have denied the plaintiff all religious participation in violation of Seperation of church and State doctrines, The Virginia bill of rights, Article 1 §, by refusing to allow inmates to address thier concerns and being denied the right to wear religious head wear

See, <u>St. Clair</u> v. <u>Cuyler,</u> 481 F. Supp. 732 (1973), and by threats to
Plaintiff with disciplinary actions which would have adverse affects
on parole decisions, dictating which Muslims can attend Prayer service,
compelling Muslims to Miss the Id-Ul-Adha Celebration which is the mark-
ing of the Religious Holy Day marking the end of Rahmadan.  These actions
and in-actions are contravining to the Interstate Agreement Corrections
Compact in denying prisoners the right to voice thier religious grievances
in accord with the I.C.C. Article V (e)(h) and D.C. Code §§ 24-1001.

## B.    SECOND CAUSE OF ACTION

46.       THE INTENTIONAL DENIAL OF ACCESS TO THE COURT THRU
          CONFISCATION OF ALL LEGAL MATERIAL UNDER FALSE PRE-
          TENCE,AND MAILING ALL LEGAL MATERIAL TO PLAINTIFF'S
          HINDERING PLAINTIFF FROM SUCESSFULLY LITIGATING HIS
          CRIMINAL AS WELL AS CIVIL LITIGATION WHICH WAS PRE-
          SENTLY BEFORE THE SUPERIOR COURT AND DISTRICT COURT

47.  Paragraph 1-46 are being Incorporated as re-alleged and re-stated

48.  On or about January 28, 1999,  Plaintiff was requested to report
to the R&D Unit at the Lorton Central Facility to be packed out and
transfered to the custody of the Sussex II State Prison System under
the authority of the Federal Bureau fo Prisons Pursuant to the Interstate
Corrections Compact between the State of Virginia and the District of
Columbia Federal Government Pursuant to D.C. Code §§ 24-1001.

49.  After arriving at the R&D unit with all Plaintiff's Personal Pro-
Perty this property was inventoried seperated and boxed up,  Subsequently
all of plaintiff's Legal Property and Material which consisted of Trial
Transcripts, Pending civil complaints and documents, Institutional gri-
evances, all mail received from both the District of Columbia Superior
Court and the U.S. District Court for the District of Columbia, as well
as all copies of Letters amile to the courts, Books Criminal and Civil,
and all other legal documents were confiscated by Corporal Sherrod, Upon
requesting why thes items were being seperated corporal Corporal Sherrod
informed Plaintiff that the Sussex II State Prison did not allow but (5)
sheets of Legal Material and all other material (Legal) had to be mailed
home or destroyed and that this was the Policy of the Virgiania Depart-
ment of Corrections,  All of Plaintiff's Legal Property was mailed
home, which never arrived.

( 21 ) _/ CONTINUED ON NEXT PAGE ..........

50.   Upon arrival at the Sussex II State Prison in Waverly, Virginia.
Plaintiff immediatly requested to know why his legal Property was con-
fiscated and allegedly mailed home, Plaintiff requested to review the
Policy Statement which only allowed (5) Five sheet's of (Legal Material)
or Property to be taken from Prisoners who has been Incarcerated for a
number of Years and are still Litigating thier criminal convictions and
some Civil Litigation as well.

51.   Plaintiff was informed by Informal Complaint (Grievance) that there
was no such Policy in effect at the Sussex II State Prison.  This resp-
onse was recived fro the Unit Manager E.T. Turner the Adminstrative Re-
medy was exhausted concerning this issue and futhermore Plaintiff's
Legal material was never returned or mailed to his home address.

### C.   THIRD CAUSE OF ACTION

52.    INTERFERENCE WITH PRESCRIBED MEDICAL TREATMENT AND CRUAL AND
       UNUSUAL PUNISHMENT IN VIOLATION OF PLAINTIFF'S EIGHTH AMEND-
       MENT RIGHT .

53.   Paragraph 1-52 are being Incorporated as re-alleged and re-stated:

54.   Again on January 28, 1999 while plaintiff was in R&D he was reques-
ted to remove his clothes for a body search - examination, At which time
it was discovered by the Sussex II State Prison Physician who wore no
form of identification that Plaintiff was wearing a (Body Glove) Back
Support Brace for his Lower back, Upon discovering this (Back Brace) the
un-identified individual requested plaintiff take the brace off and att-
empted to confiscate the (Back Brace) which Plaintiff refussed to turn
over this (John Doe) defendant then called other correctional staff who
himself and other staff members threatened plaintiff with threats of
violence if the plaintiff did not turn over the (Prosthesis) equipment
so that they could throw it away after using violence by choking the
plaintiff and taking the (Back Brace) the (John Doe) Defendant instructed
the Central Facility Officer to throw the (Back Brace) into the trash.

55.   At which time a Central Facility (Captain) came thru R&D and saw
the officers assaulting me and saw that I was not resisting requested
to know why I was being choked and beaten, I informed this (Captain)
that I suffer from a Pre-existing Back Injury from a gunshot wound and

( 22 ) __/ CONTINUED ON NEXT PAGE .......

upon entering the District of Columbia prison system in 1993. Plaintiff arrested wearing a medically prescribed back brace (Body Glove). Plaintiff also informed the central facility captain that he had in his property a authorization form from the medical doctors at central facility to have the back braces and was authorized thru medical to wear the back brace at all times as well as authorization for bed boards to support plaintiff's back while sleep or laying down.

56. The central facility captain upon reviewing the authorization form requested his officers to place the back brace in Plaintiff's property with his other back brace with the authorization forms.

57. Plaintiff contends and re-allege that he suffered then and now from a Pre-existing lower back injury from a 1992 gunshot wound to his lower back which was futher (excerbated) by the assault by the Sussex II State Prison Correctional Officers Thomas, Gillian, Hews, Clark, Brown, and several Central facility Officers who subjected the palintiff to crual and Unusual punishment by assaulting plaintiff by Choking him and then requesting plaintiff under duress to Bend, Squat, Kneel, being informed by plaintiff that he suffered from a gunshot wound which would not allow him to perform these task's and out of deliberate indifference to the plaintiff's medical problem, the above named defendants beat, and kicked plaintiff several times simply because he could not perform or comply to the request's of these officers because of extensive pain in his lower back which prevented plaintiff from Bending or Kneeling and the fact that Plaintiff would not allow him them to destroy or throw away his (Back Brace).

### D.  FOURTH CAUSE OF ACTION
### EXCESSIVE USE OF FORCE, CRUAL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE PLAINTIFF'S EIGHTH, FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION AND DUE PROCESS

58. Paragraph 1-57 are incorporated by reference as re-alleged:

59. After the above mentioned incident Plaintiff was then turned over too the transportation officers Thomas, Hews, Gillian whom at the time of this incident were all corporals and under the the Supervision of Sergeant Brown, who sat by idly and watched the above defendants use

unprovoked and unnecessary force aginst the plaintiff out of retaliation
for the incdent mentioned in paragraph 54-57 of this complaint.

60.  Plaintiff out of retaliation was again for the second time reques-
ted to remove his clothes (Striped) by the above named defendants all of
whom were Sussex II State Prison Officers requested again under duress
that plaintiff Bend, Kneel, Squat, then demanded that the plaintiff re-
move all the (Plaits) of hair from his head, at which time the defendants
surrounded plaintiff each holding a hand held (Taser) shocking the Plain-
tiff as he took out each plait which more than (100) One Hundred or more
plaits in all,  Simply because the above named defendants felt that the
plaintiff was not moving fast enough taking out the Plaits without a comb.

61.  Plaintiff was shocked on his chest, back, legs, arms leaving burn,
marks and severe pain,

62.  These defendants, action were unprovoked, the above mentioned defen-
dants were laughing, joking, and continuously shocking the plaintiff
over and over simply to arouse laughter and pain to the plaintiff,  These
actions were done out of maliciously and Sadistically out of deliberate
indifference to cause unwonton infliction of pain in total disregard to
plaintiff's disability.

63.  Defendants, Hews, Thomas, Gillian, and Brown acted with the intent
to cause harm mentally and Physically.

64.  Plaintiff states and re-allege that defendant Brown was present
as a supervisory official, the supervisor of all the above named defen-
dants and failed to use the realistic opportunity to prevent of stop
the unnessary use of the (Taser) being used on Plaintiff.

65.  Plaintiff was then placed in restraints, hand-cuffed and dragged
on the bus at which time was then gased with mace, again uncalled for.

E.    FIFTH CAUSE OF ACTION

THE RIGHT TO REFUSE TREATMENT WHICH IS KNOWN
KNOWN TO BE HARMFUL OR CAUSE AN ALLERGIC
REACTION

66.    Paragraph 1-65 are being incorporated by reference as re-alleged:

67.    Upon arrival at the Sussex II State Prison in Waverly, Virginia on or about Jnauary 28, 1999. Plaintiff was escorted from the bus in full restraints by the Sussex II State of Virginia Correctional staff officers Thomas, Hews, Gillian, Clark, and the Supervisory staff members present were Sergeants Brown, Bullock, and Captain Jenkins. Plaintiff, was escort ted into an examination room which was apart of the intake area. Again during this whole time the plaintiff was never taken out of the full restraints which consisted of handcuffs, waist chains, ankle chains. Defendants, Bullock, Jenkins, and Appel and a Jane Doe nurse awaited in ambush along with a John Doe Correctional Officer who vidio taped this whole incident the above named defendants injected the plaintiff intentionally with deliberate indifference to his constitutional right to Crual and unusual Punishment under the Eighth Amendment not to subjected to assualt and battery by administering a harmful substance which caused harm and an allergic reaction as well as the actual Hepattis virus.

68.    Plaintiff was injected against his will with a unknown substance by the Physicians assistance (Appel) which the substance was alleged to have been the (Hapatitis B Vaccine) which was not authorized by the District of Columbia Department of Corrections or the Federal Bureau of Prisons, nor was this apart of the original contract between the District of Columbia and Virginia.

69.    Plaintiff, contend and resert that he was given a full physical before being transfered to the Sussex II State Prison Facility, By the medical staff at the Lorton Central facility. This physical consisted of full blood work and Lab work for viral disease's as well as the regular whole body physical and the plaintiff was given a clean bill of health free of any viral disease upon leaving the Lorton Central Facility.

( 25 ) __/ CONTINUED ON NEXT PAGE .......

70.  Upon being escorted into the examination room inside the intake
unit plaintiff immediatly objected verbally and Physically to being
injected with this un-authorized alleged (Hepatitis B Virus) at which
time plaintiff was physically restrained by captain Jenkins and two
other officers plaintiff informed all the above named defendants of his
conscious decision not to be injected,  As well as his decision to refuse
the injection af the alleged (Hepatitis B Vaccination) of the grounds of
his sincere religious belief's and the fact that the plaintiff is allergic
to certain medications as well as food products and especially Penicillin,
and furthermore, the needles were already pre-prepared with this unknown
substance which I have a right to refuse.

71.  Plaintiff, asserts and contends that as a direct result of being
injected by the defendants, plaintiff became faint, extremly dizzy, an
immediate rise in blood presure, rapid heart rate, nauseous, Stomach cramps,
headache, and severe breathing probelms.

72.  As the defendants observed these symptoms they became alarmed and
and attempted to threaten plaintiff with a direct order to sign a
"Informed consent form".   Which was presented after the plaintiff was
injected and the defendants realized that the Plaintiff was haveing an
alergic reaction to the injection given to him by the defendants under
duress and threats which plaintiff refussed to sign and the plaintiff
has a copy of the refussed consent form for this unlawful injection.

F.   SIXTH CAUSE OF ACTION

DENIAL OF ADEQUATE MEDICAL TREATMENT
CRUAL AND UNUSUAL PUNISHMENT IN VIO-
LATION OF THE EIGHTH AMENDMENT FOR
THE DENIAL OF ADEQUATE TREATMENT FOR
A PRE-EXISTING LOWER BACK INJURY.

73.  Paragraph 1-72 are being incorporated by reference as re-alleged
and restated.

74.  Plaintiff named herein alleged that defendants District of Columbia,
Angelone, Pearson, Everette, Willis, Washington, Gilmore, Taylor, York,
Turner, Flemming, Dr. Ulep, Samoria, Burney, Johnson, Appel, Morris,
Janice Turner, Ellis, have deliberatly with deliberate indifference denied

75. Plaintiff, contends grievance's was filed concerning the return of plaintiff's property because before I was informed by officer (Glassmeyer) that he had actually lost plaintiff's (Back Brace). Glassmeyer, informed the plaintiff that he had checked the records and that the back brace he had confiscated was on file and that he would return the brace in a day or two. Several day's thereafter upon making the same request for the return of plaintiff's back brace the defendant Glassmeyer informed plaintiff taht he could not find plaintiff's back brace.

76. This grievance was filed on 3/28/02,5/10/02,8/17/02 all exhausting remedy's requesting the return or replacement of plaintiff's back brace.

77. Plaintiff, also requested to be seen by medical because of severe excruciating pain of not having his Back Brace or any medication for the constant pain, Because the defendants was intentionally denying plaintiff pain medication by prescribing plaintiff with a (Placebo) which is a harmless, unmedicated preparation given as a medicine to a patient merely to humor him, or used as a control in testing the efficacy of amother, meddicated substance, something said or done to win the favor of another. this substance given to the plaintiff as pain medication had no effect.

78. On or about May 17, 02. Dr. Ulep examined plaintiff ans found that the plaintiff suffered from a Pre-existing gunshot wound to his lower back at which time Dr. Ulep placed an order for a (Back Brace)(Prosthesis) however, the order was never placed by the Physicians assistant (Appel) who chose to instead supply the plaintiff with a Weigh support belt from the culinary dept warehouse which is used for the inmates while working and lifting heavy materials, this order prescribed by Dr. Ulep was not made to save the institution money. The particular brace that was offerd is not medically prescribed for back support for an injury, but to instead prevent an injury from occuring, there are no padding, protection. Which the medical staff knew would serve no purpose outside of saying that I was provided with something or offered a brace.

79. Again, plaintiff asserts and contends that he refused the weight lifting belt because it would serve no purpose and was of no use to the plaintiff medical need's.

80.  A grievance was initiated concerning the plaintiff not receiving
the prescribed treatment and the defendant Appel asserted in the grievance
that the plaintiff was examined on or about 6/25/02 and informed the def-
endant that he no longer had a back problem which had been resolved.

81. Plaintiff, asserts that he never made the above statement and that
defendant Appel made the statement out of retaliation for the plaintiff
refussing the weight belt he attempted to provide instead of ordering the
medically prescribed (Back Brace) prescribed and and requested by Dr. Ulpe
be ordered for the plaintiff's injuries.

82.  Again, plaintiff asserts and contends that he suffers from a lower
back injury un-related to his incarceration which he endured shortly be-
fore his arrest for the instant offense,  Plaintiff states that he has
been receiving treatment from the time he became incarcerated on July 28,
1993 thru 1999 and being transfered to the Sussex II State Prison Facility
and the intentional denial of medical treatment and the interference of
medical treatment from the defendants has exacerbating plaintiff's back
injury by denial of adequate medical treatment and interference with pre-
scribed medical treatment.

83.  Plaintiff asserts that he received treatment at the following
facilities the District of Columbia (Central Detention Facility), the
Occoquan facility, and the Central Lorton facility.  Futhermore, Plaintiff
states that the medical condition is is listed in his Institutional
medical file as well as plaintiff's medical file in society at the D.C.
General Hospital files in Washington D.C. .

84.  Plaintiff, asserts and claims that the District of Columbia defend-
ants have an independant responsibility "not to sit idly by as thier
inmates in the Virginia Department of Corrections Physical custody have
thier rights violated.

85.  Plaintiff, states that he repeatedly sough medical treatment for
lower back pain from the defendants from January 28, 1999 thru October
30, 2001.

86.  Plaintiff, asserts and re-alledge that on January 28, 1999.  The
District of Columbia Correctional officers and officials sat by idly by
while plaintiff's rights were violated by the Sussex II State Prison
officials violated plaintiff's Eighth Amendment right to medical treatment
already prescribed be taken and sat by while plaintiff was physically
assualted by being (Tased) by the Sussex II State Prison officers.

87.  Out of retaliation for filing grievances and complaining about the
treatment plaintiff was subjected too,  Plaintiff was assigned to a top
bunk.  Which required plaintiff to physically have to climb up and jump
down to get to the floor for all of the institutional counts, the use of
the toilet, which again was in retaliation for plaintiff refussing to
sign the consent form concerning the forced injection of the (Hepatitis B
Vaccine) this retaliation caused even more pain to my back injury.

88.  Grivances was filed concerning these issues on 2/1/99.

89.  These defendants out of deliberate indifference to the plaintiff's
serious medical needs knew thier actions would cause severe pain and thier
actions were done to with the intent to cause the plaintiff pain and suffer-
ing and the unnecessary and wanton infliction of pain from the constant
climbing to the top bunk and having to jump back and forth.  Again plain-
tiff states that he informed the defendants of his injuries the severe
pain upon entering the Sussex II State Prison.

90.  Plaintiff, asserts and contend that the defendants response concern-
ing the return of his back brace and the assignment to a top Bunk was as
followed:

              "Your back will be further evaluated and an appointment
         has been requested,  Will keep you informed of develpoments"

                                        [ Dated  2/10/99]

91.  The above response was afforded concerning Plaintiff's issues con-
concerning the confiscation of plaintiff's (Prosthesis) and the assign-
ment to a top bunk as well as the attempt to give plaintiff a weigh lift-
ing belt in the place of a medically prescribed Back Brace.  [This is the
ordered Prosthesis at this facility].

( 29 ) __/ CONTINUED ON NEXT PAGE ........

92.  The above mentioned response was sent back to the Plaintiff from the defendant thru the institutional mail concerning this issue being raised pursuant to the grivance procedure:  The response from the grivance stated that: This is the ordered  Prosthesis used at this facility, meaning the (weigh belt).

93.  Plaintiff states and contend that he has personal knowledge that the weight belt provided for the plaintiff by defendant appeal was not the (Prosthesis equipment Provided by the State of Virginia for legitimate back injuries.  The medically provided back braces provided thru the State of Virginia are the [Flexbac - Allegro - Nomics] back brace for inmates with the same or simular injuries,  Out of retaliation plaintiff was denied his medically prescribed brace for filing numerous administrative remedys against the medical department.

94.  Plaintiff, states that under Statutory provisions of D.C. Code § 24-442 the defendants District of columbia are responsible for providing Plaintiff with proper medical treatment, care, along with the Virginia Department of Corrections defendants.

95.  Plaintiff, has suffered serious and significant physical and mental injury as a result of the defendants actions or in-actions by not abiding by the conditions set forth in section 24-1001 of the Interstate Corrections compact Agreement pursuant to Article III. (a)(2).  Which States:

> Payment to be made to the receiving State or the Federal Government, by the sending State for inmates maintence, Extraordinary medical and dental expenses, and any participation in receipt by inmates for Rehabilitative or Correctional Services, facilities, Programs, treatment, not reasonably included as part of normal.

G.    SEVENTH CAUSE OF ACTION

THE INTENTIONAL DENIAL OF BASIC DECENCY UNDER THE EIGHTH AMENDMENT WITH RESPECT TO TREATMENT OF PLAINTIFF AS A HUMAN BEING AND PURSUANT TO THE COMPACT AGREEMENT BEING TREATED IN A REASONABLE AND HUMANE MANNER AND EQUALLY WITH SIMULAR INMATES OF THE RECEIVEING STATE PURSUANT TO D.C. CODE § 24-1001 ARTICLE IV. (e).

96.  Paragraph 1-95 are being incorporated by reference as re-alleged and re-stated:

97.  Plaintiff, states and contend that the defendants Pearson, Burney, Everett, Willis, Bullock, Mathews, Flemming, Angelone, District of Col-unbia, United States of America, Federal Bureau of Prisons, York, E.T. Turner, Lt. Turner, Washington, Gonzalez, Williams, J. Turner, White, are all defendants responsible for the Plaintiff's care, custody, sub-sistence, treatment, rehabilitation, reformation Pursuant to the the Interstate Agreement signed between the District of Columbia and Virginia Pursuant to D.C. Code §§ 24-1001.

ARTICLE IV. (e)   All inmates confined in an institution pursuant to the provisions of this contract shall be treated in a reasonable and humane manner and shall be treated equally with similar inmates of the receiving state confined in the same institution. The fact of confinement in a receiving State shall not deprive any inmate so confined of any legal rights of the sending state.

98.  Plaintiff, asserts that the above named defendants out of deliberate indifference intentionally denied plaintiff his basic Human needs as well as well as the right to be treated in a Humane Manner in accord with Article IV of the Interstate Agreement Contract and subjected the plain-tiff to crual and Unusual punishment with the use of retalitory tactic's and retaliation for the plaintiff excercising his right to use the ad-ministrative remedy Process concerning the Grooming Policy 846.  Because plaintiff chose to excercise his right the above named defendant denied Plaintiff the Opportunity to call the Hospital to inquire about his bio-logical mothers addmitance for Cancer and the fact that she was in a coma as well as denied the opportunity of other similar situated Prisoners who was allowed to call the Hospitals as well as call home to inquire about thier family members illness's.

99.  On or about July 17, 2000, Plaintiff 's biological mother was admitted into the District of columbia General Hospital, in Washington, D.C. .  Plaintiff biological daughter called the Sussex II State Prison and contacted Unit Manager E.T. Turner and informed him that the Plain-tiff's mother had been admitted into the hospital and was comatose and had been in the hospital for the past three day's and was not inspected to live.

100.  Plaintiff, requested a emergency telephone call and was denied by Mr. Turner and Sgt. Bullock,  Plaintiff then submitted a emergency grievance on July 19th 2000 which stated:

> My mother has been admitted into the hospital and has been in a coma for the past three days, I am requesting a emergency phone call to obtain information concerning the status of my Mother's condition,  As well as speak to my family members concerning this matter and discuss funeral arrangements if she pass's away.  I am requesting to make a call to the D.C. General Hospital.  I am unable to use the inmate phone because of my indigency and cannot afford the cost of the phone call, Futhermore my family members have a block placed on thier phone by the phone company and I cannot make collect calls.

101.  The response received from the administration was as follows:

PART - B - STAFF RESPONSE

Your grievance does not meet the definition for a Emergency:

REASONS:

102.  The Institution do not make such phone calls,  You need to use the inmate phone to call your family members.

103.  This grievance was signed by the Staff Sgt. Virginia Bullock.

104. Who denied the plainitff's emergency request out of retaliation from the plaintiff filing previous grievances against her for refussing to sign mony withdrawl request forms so Plaintiff could have monies withdrawn from his account for legal copy's.

105.  Plaintiff, states that the Virginia Department of Corrections: D.O.P. States: Emergency telephone calls:  Staff verified instances of serious illness, injury,or death in a inmates immediate family.

106.  On July 18, 2000. Ms. Mathew the "Rehabilitation Counselor" employed by the Sussex II State Prison verified by telephone that Plaintiffs "Biological" mother was admitted into the District of Columbia General Hospital was and was in critical condition and in a coma and never informed the plaintiff of his mothers condition nor the fact that she had already verified the fact that my mother was in the hospital in critical condition a serious illness.

107.  After a week of not hearing from the staff at the Sussex II
facility,  Plaintiff submitted a request to know the status of his
Mothers hospitalization or if plaintiff would be allowed to call a
family member.

108.  Plainitff was informed by Ms. Mathews that Plaintiff's mother
since the initial request for a phone call to the hospital.  Inhan
intentional act to deny plaintiff a phone call Ms. Mathews informed the
plaintiff that his mother had been released from the hospital and sent
home,  However, the plaintiff's mother was still in a coma and the in-
fromation was incorrect and told to the plaintiff out of deliberate
indifference to plaintiff's right to equal treatment of similar prison-
ers  and caused mental and emotional distress,  Because in all actual-
ality plaintiff's mother had been transfered to the "Georgetown Univer-
sity hospital where she under went major "Lung Cancer Surgery" which
her left lung was removed and replaced with a Tube, Plaintiff's mother
remained in the intensive care unit for (4) four months from July 17,
200 untill October 2, 2000.

109.  At no time was the Plaintiff allowed to call the Hospital.

110.  Plaintiff states and contend that these actions by Ms. Mathews
was deliberate and out of retaliation for the plaintiff again utiliz-
ing his right to file grievance's,  these actions were also coerced by
by the unit manager Mr. Turner and Sgt. Bullock.

111.  Plaintiff, asserts that he has been denied the basic right to
to be treated in a reasonable and Humane manner and denied his basic
human right "Out of deliberate indifference with the deliberate in-
tention to cause and inflict, a wanton infliction of pain, mentally
and emotionally as stated above of oout of "retaliation for the use
of the right and the courts requirement of the use of the exhaustion
of the grievance proceedure in order to obtain relief to find out the
medical status of my biological Mother's hospitalization status in a
(D.O.P.) Policy critical, serious, or life threatening Illness, an
injury which resulted in death.

112.   The actions of the defendants has caused the plaintiff irrepair-
able Mental and Emotional damage.

113.   According to the (Interstate Corrections Compact) between any
State or States legally joining in the compact under section 24-1001,
Article IV. (e).   States:

> All inmates confined in a Institution Pursuant
> to the provisions of this compact shall be
> treated equally with similar inmates of the rec-
> eiving state confined in the same institution.

Furthermore, the District ofColumbia "In <u>Jackson</u> v. <u>District of Colum-
bia</u>, 89 F. Supp. 2d 48 (D.D.C. 2000) quoted:  the defendants District
of Columbia have an independant responsibility not to sit idly by as
thier inmates rights are being violated.

The fact that confinement in a receiving State shall not deprive any
inmate so confined of any legal rights which the inmate would have
had if confined in an appropriate institution of the sending state.

114.   On January 10, 2000,  Plaintiff's daughter Lisa S. Durham called
the Sussex II State Prison and spoke to Mr. E.T. Turner informing Mr.
Turner that plaintiff's mother had been re-admitted into the hospital
and requeste that plaintiff be informed and if possible allowed to
call home.

115.   Plaintiff states and contend that he had on several occations
informed Mr. Turner and all the above mentioned defendants in the
complaint that he was unable to use the inmate phone system because
of the cost which was a grave burden on his family members, the in-
mate telephone system was collect call only and the prices were very
un-reasonable for the District of Columbia prisoners calling collect
and all the Supervisory officials were aware of these outrageous cost
the responsible officials were Pearson, Burney, Everret, and M.C.I.
World Comm.

116.  Plaintiff states that on or about January 12, 2000.  Plaintiff's
mother passed away,  Plaintiff was again refussed and denied a emer-
gency phone call by Mr. E.T. Turner and denied the request to visit
the hospital before she passed and review the body at the funeral
home and futhermore all access to the plaintiff's family was cut off
because of the Institutional phone company (M.C.I. World Comm) placed
a block on plaintiff's mothers phone at her home which was the only
phone available to family members because it's where all family members
stayed thru out the whole funeral, this action was arbitrarilly done
without consent because the phone was in my mothers name and she had
passed away.

117.  Plaintff asserts and contend that he conuld not call there ini-
tially because the  E.M.T.'s who took his mother to the hospital locked
the house up and no one had access to her home untill the hospital re-
leased them her key's to my brother.

118.  Plaintiff, also assert and claim that the Virginia defendants
were subjecting plaintiff's family members and Attorney to reveal thier
personal and confidential information (e.g. Social Security numbers
and copy's of thier Phone bill in order for Plaintiff to receive visit's
or use the inmate telephone system.  Which was not requested at any
other institution housing the Virginia inmates where Virginia's own
prisoners were being housed.  This personal information which was being
requested was a violation of privacy rights and possible exposure to
Idenity fraud and a hardship and was soly used as a deterent to family
members to cut ties with thier incarcerated loved ones housed in the
Sussex II State Prison System.  This was not a policy used in the
the District of Columbia and was only mandatory for the inmates housed
at the Sussex II State Prison the District of Columbia Prisoners.  Which
was a discriminatory process and in violation of the Fourteenth Amend-
ment to the United States Constitution and the Eight Amendment to crual
and Unusual Punishment.

119.                H.   EIGHTH CAUSE OF ACTION

               DENIAL OF ADEQUATE AND REASONABLE ACCESS TO
               THE INSTITUTIONAL LAW LIBRARY AND REASONABLE
               ACCESS TO THE NESESSARY LEGAL MATERIAL TO FILE
               MEANINGFUL PLEADINGS TO THE DISTRICT OF COLUM-
               BIA SUPERIOR COURT AND THE INTENTIONAL DENIAL
               _____ OF ACCESS TO THE COURT _____

120.  Paragraph 1-119 are being incorporated by reference as re-alleged
and re-stated:

121.  Plaintiff, named herein allege and contend that the defendants,
District of Columbia, Washington, York, Willis, Williams, Angelone,
Pearson, Burney, Everett, Morris, Flemming, E.T. Turner, J. Turner,
Johnson, Rollins, Bullock, Kriigel, White, Houston, Rollins, Federal
Bureau of Prisons, United States of America, have all refused to recog-
nize the decree in Green v. District of Columbia, No. 90 - 793 (D.D.C.
1990) by the District of Columbia placing the plaintiff in a facility
which refuse to  provide plaintiff with reasonable access to the case
law material from his respective jurisdiction or allow adequate access
to the Law Library or to have any one trained in the Law meaning Correc-
tional Staff or inmate clerks trained in the Law to assist inmates with
meaningful pleadings to the court.

122.  Specifically, the defendants have failed to provide the plaintiff
with adequate access (hands on access) to the prison computers CD Rom -
Lexis information inside the Law Library for the Atlantic Reporters,
Supreme Court Reporters, and case law from the District of Columbia
A. 2d case law. There are no books or computer related Disc's with
administrative Law, Parole regulations, Ploicies, Civil or Criminal
manuals, Heabus Corpus, nor any 1983 civil complaint forms for use of
inmates filing Pro-Se none of whom are trained in the law.

123.  There is also no on site Zeroxing machine or system in the Sussex
II State Prison Law Library to prevent the Plaintiff from having to hand
over his legal pleadings and Material to the defendants, who arbitrarily
pre-screen and read, make copies  and destroy material before copying
as well as confiscate materials pertaining to them.

In an attempt to hinder Plaintiff from filing against the defendants for the intentional denial of access to the courts.

124.   Plaintiff, also contend that he has been denied access to adequate Typewritters to type legal Motions, Pleadings as mandated by F.R.C.P. Rule (32)(a) which relates to briefs, also the direct denial of legal paper, pens Carbon Paper, as well as the denying of inmates who cannot afford the $ .20 cents per copy for copying legal material and documents.

[ Institutional operation Procedure §§ 867 - 7 - 3 et seq] inter alia.

125.   Plaintiff, asserts and contend that the above mentioned defendants was the direct result and cause of Plaintiff's Civil rights case being dismissed in case No. 98. - 7051 - 97-CVO- 1284.   For failure to Prosecute and the defendants continued denial to honor several requests forwarded to the (TPS) which was required to obtain access to the Law Library as mandated by the defendants own policy and procedure in Policy statement §§ 867.7 § et seq, as a subterfuge and obstacle to prevent plaintiff from reaserching and filing meaningful Pleadings against the administration and the defendnats mentioned in this complaint.

126.   The above named defendant have intentionally with deliberate indifference to the Privacy of the Plaintiff intentionally Opened the plaintiff's legal mail which was (Clearly marked Open only in the presence of inmate) or (Priviledged and Confidential) Open only in the Presence of Inmate,   Which on one occation resulted in several of the Plaintiff's (Trial Transcript) pages missing from the result of the defendants opening the plaintiff's legal mail clearly marked in violation of the right to Privacy and confidentiality.

127.   Plaintiff also states that the defendants also opened his confidential mail coming from the D.C. General Hospital Health Services which contained plaintiff's Private and confidential medical records which was also clearly marked (Priviledged and Confidential) Open only in the Presence of Inmate this mail was received on or about 5/24/00, 7/13/00 and 7/31/00.

(  37  ) __/ CONTINUED ON NEXT PAGE .......

128.  On or about 4/23/01, Plaintiff's cell was shaken down and staff
members Officer Williams personally went thru my personal mail and legal
mail, at which time the defendant came across a notorized affidavit which
the defendants read aloud to the plaintiff and other officers and the
Plaintiff's cell mate then questioned the plaintiff as to why he had
the affidavit in his Possession.

129.  The above mentioned affidavit was concerning another's sworn
statement that his mother had also previously passed away, and was given
numerous phone calls to contact his family members several times thru-
out the week of the death, and that these emergency call's he received
were given to him by the same staff members who denied me a personal
call to the hospital or to contact family members in violation of my
right to be treated fairly and equal and as any other simularly situated
prisoner.

## I.    NINTH CAUSE OF ACTION

130.              DENIAL OF AN ADEQUATE AND EFFECTIVE GRIEVANCE
                  PROCEDURE TO ADDRESS LEGITIMATE CONCERNS.

131.  Paragraph 1-131 are being incorporated by reference as re-alleged
and re-stated:

132.  Plaintiff, herein named and all District of Columbia Prisoners
transfered to the Sussex II State Prison at all times relevant have
been denied any inpute what so ever with respect to the inmate grievance
procedure mechanism as other Virginia Prisoners by the defendants,
Angelone, Pearson, Everett, Morris, Johnson, District of Columbia, Willis,
Burney, Flemming, Turner, Federal Bureau of Prisons, United State of
America, White  and thier agents and employee's.

133.  Plaintiff contends that contemporaneous to filing this instant
complaint the defendants have failed out of deliberate indifference
and refussed intentionally to provide the plaintiff with the necessary
(appeal) forms and the complete addresses to where the appeals are mailed
at the administrative levels which is the regional Director of the
Department of Corrections or the level (3) three Deputy Director these
actions were a direct effort to preclude judicial review to stop both

Petitions for relief and hinder civil matters as mandated by prisoners
litigation Reform Act and 42 U.S.C. §§ 1997 (e) et Seq., ...    Where
Plaintiff is compelled to demonstrate that he has pursued  all grivences
at each level prior to Prtitioning the Court.

134.  Plaintiff asserts and claims that at all times he ramained
under the Jurisdiction of the District of Columbia and should have
been afforded the same rights, priviledges and benefits as other
Virginia Prisoners as promulgated by the Interstate Corrections Compact
§§ D.C. Code 24-1001, and the Virginia Code §§ 1950, § 53.1- 216, 217.
plaintiff has not been afforded his rights to act in any advisory role
with the grievance proceedure, non-participation contravening to the
D.C. Department of Corrections Policy in Department Order  4030 D.C.
May, 1992.

135.  Plaintiff also contend that the defendants are filing false
disciplinary charges, charging plaintiff and all the District of
Columbia prisoners housed in the Sussex II State Prison with false
and unfounded, disciplinary charges for the sole purpose of monetary
gain Pursuant to:

     In accordance to D.O.C. 861, - Inmate Disciplinary dated September
1, 2000. (Hand Book ) Page (10)-(N)-1 States as follows:

  Fine of Loss of Pay - Penalty - 5:

  1.  A fine up to 12.00 or the loss of up to 60 work hours may be
  imposed.

  2.  When a fine is imposed, the fine will be deducted from the
  inmates account and placed into the commissary fund. If there
  are insufficient funds on the inmates account to cover the fine
  the fine will be set up as an outstanding debt to be paid when funds
  are deposited to the inmate account.

  3.  When loss of pay is imposed, the penalty starts on the first
  day the inmate is scheduled to work after the conviction for the
  infraction, and runs forward for the number of hours of work specified
  (up to 60 hours).  During the penalty period the inmate works thier
  regular scheduled days and hours, but does not receive pay on his
  account.

( 39 ) __/ CONTINUED ON NEXT PAGE ........

4.  When an inmate refuses to work following imposition of this penalty,
the inmate should be charged with "refussing to work" in accordance with
this procedure.  The loss of pay penalty for the original infraction
will begin when the inmate returns to work.  The penalty, unless sus-
pended, must be satisfied by working before the inmate can start earn-
nin pay again.

136.  The deliberate failure and refusal of the District of Columbia
defendants to sit idly by and not enforce compliance of the Interstate
Compact Agreement between the District of Columbia and the Virginia
Department of Corrections were the direct and Proximate cause of Plain-
tiff's injuries needles to say a direct Denial of Plaintiff's Due
Process and Equal Protection of Law.

### TENTH CAUSE OF A ACTION
J.  DENIAL AND INFRINGMENT UPON THE EX-POST
    FACTO PROHIBITION OF CHARGING PLAINTIFF
    MEDICAL CO-PAYMENT FEES, EFFECTIVE JULY
    1, 1995.

137. Paragraph 1-137 are being incorporated by reference as restated
     and re-alledged.

138.  Plaintiff, states that under statutory provisions of D.C. Code
24-442, The defendants, District of Columbia is responsible for pro-
viding plaintiff's care, treatment custody, safekeeping, Protection,
Discipline Rehabilitation, Reformation, of all Prisoners committed to
such institutions.  The Department of Corrections with the approval
of the counsel of the District of Columbia shall have the power to pro-
mulgate rules and regulations for the government of such Institutions
and to establish and conduct industries, farms, and other activities,
to classify the inmate, and to provide for thier proper treatment, care,
rehabilitation and reformation. (June 27, 1946, 60 Stat. 320, ch 507,
§ 2; 1973 Ed., § 24-442).

139.  Defendants District of Columbia has relieved itself of Plaintiff's
medical care and treatment by delegating authority to the Virginia
Department of Corrections defendants Angelone, Pearson, Burney, Everett,
Willis, Johnson, Flemming, Morris, Ulep, Gonzalez, Federal Bureau of

prison, Washington, York, and Williams, to charge each inmate Medical
Co-payment as promulgated in the Corrections Service Contract between
the District of Columbia Department of Corrections and the Virginia
Department of Corrections, Pursuant to Article. IV (c). See also
Herbert v. District of Columbia, 691 A. 2d 1175 (D.C. App. 1997) (The
Prisoners total dependency on the District of Columbia to provide
medical care makes the District's duty non-delegable").

140.  In fact the plaintiff named herein have entered the Corrections
System well before July 1, 1995.  Effective date of the medical Co-Pay-
ment law, and are being charged fees for treatment and medical care,
dental, and Eye Care .... a fee that makes thier punishment more severe
and disadvantage the Plaintiff because, prior to transfere to the Sussex
11 State Prison, all of Plaintiff's medical care and treatment were
pre-paid for by the District of Columbia Department of Corrections.

141.  Futhermore, because of the nominal wages the Plaintiff is being
paid $ .20 to .35 cents per hour for those inmates who have been affor-
ded work Opportunities.  The Plaintiff is precluded from purchasing the
necessary amenties of Prison life which consist of hygiene and other
personal items which cannot be maintained due to having to surrender
thier earnings in order to receive Medical Treatment.

142.  Additionally, Plaintiff asserts that when not working and he is
forced to receive assistance from family or friends are therefore
denied proper medical treatment and care, consistent with the free
world ministering.

143.  Plaintiff has also been denied out of retaliation, Medical
treatment, Pain medication, and Medical Prosthesis Equipment, proper
Eye care for which plaintiff has a Rare eye condition which require
plaintiff to need a eye examine and a new prescription every six months
which plaintiff was denied and once prescribed and given the wrong
eye prescription eye glasses.

(   41   ) CONTINUED ON NEXT PAGE .........

144.   These deleberate actions of the defendants are the direct and proximate cause of plaintiffs injuries and an infringment upon the Ex-Post Facto provisions of the United States Constitution as well as a direct Denial of Equal treatment of rights and Priviledges under the Fourteenth Amendment.  See §§ 53.1 262. The actions of the defendants are in direct conflict with § 24-1001. Interstate Corrections Compact. Article IV. (e)(f)(h) and Article 111. (a)(3).

ELEVENTH CAUSE OF ACTION

K.   DEPRIVING PLAINTIFF OF THE BENIFITS OF HIS LABOR AND BENEFITING FROM PLAINTIFF'S LABOR CONTRAVENING TO THE CORRECTIONS PRIVATE MANAGMENT LABOR ACT OF §§ 53.1 262, 1950 CODE OF VIRGINIA.

145.  Paragraph 1-145 are incorporated by reference as re-alleged and restated.

146.   Plaintiff, herein allege that the defendants District of Columbia, Angelone, Pearson, Everett, Burney, Willis, Johnson, Flemming, Washington, Morris, Holmes, Hill, Langford, York, Federal bureau of Prison, Gonzalez have all refused to enforce the provisions of the Virginia Corrections Private Act which precludes the defendants from Benefitting from Prisoners labor.

147. Plaintiff has been forced under duress and intimidation tactic's to work for minumal pay for which plaintiff has been denied the adequate pay for the many over time hours of work and labor, Specifically, Plaintiff was assigned to the Culinary Department (Kitchen) and performed the duty of preparing the Religious Common Fare diet and worked (11) Eleven hours shifts (5) days a week accuring up to (55) Fifty five hours a week and denied (66) Sixty six hours and a decrease in Pay.

148. Unfortunatly, Plaintiff was only paid (51) Fifty one hours.

The Virginia Corrections Private Management Act § 53.1 - 262, Supra. 2 Subsection § (b),  Provides : Inmates with work or Training Opportunities while incarcerated:  However, the contract shall not benefit financially from the labor of inmates.

( 42 ) CONTINUED ON NEXT PAGE .........

149. The defendant claimed that there was no way of paying plaintiff
for the many overtime hours he was forced to work under duress by the
defendants or be placed in administrative segregation for refusing to
obey a direct order. These defendants knew that they would be calling
plaintiff to work on his day's off and they could not pay for this labor
for overtime hours because the Virginia Bureau of Prisons policy is
that (51) Fifty one hours is the limit of weekley hours an inmate is
allowed to accumalate and be paid for.

150. Moreover, defendants have benefitted from Plaintiff's labor again
by charging a $ 5.00 fee to see the prison doctor or nurse plus a
$ 2.00 fee per prescription for medication, Also plaintiff was charged
for medical Prosthesis, dentures, and eye glasses. The defendants
are also removing the accessiries from the manufacturing ordered tele-
visions and re-selling them back to the Inmate population as seperate
for another fee.

151. The above mentioned items are consisted of the AC/DC adapters,
for the Radio's and Cassette Players and the head phones which are
part of the radio when purchased from the manufactures, furthermore
all these items were purchased whole sale. (as is) to the defendants
who in turn sold them to the plaintiff and all other inmates at the
Sussex 11 State Prison the defendants sold these items knowing that
the life expectancy was no more than (30) Thirty to (90) days which
the defendants would then conduct an annual Institutional shake down
which lasted for weeks and confiscated all the Televisons and Radio's
and all other accessories that had minor defects to force plaintiff
and all other simular inmates housed at Sussex 11 State Prison to re-
purchase these same defected items again which may have had only a
lose antena or an adapter with a shortage or a television which the
knob was lose.

## TWELTH CAUSE OF ACTION

### L. DELIBERATE USE OF RETALIATION AND THE USE OF RETALITORY TACTIC'S

152. Paragraph 1-152 is being incorporated by reference as re-alleged
and re-stated:

( 43 ) __/ CONTINUED ON NEXT PAGE ......

153. Plaintiff, claim that he has been intentionally subjected to the use of retaliation and crual and unusual punishment for using the Prison grievance system provided to address complaints of the denial of rights afforded by law pursuant to the united states Constitution.

154. Plaintiff, asserts and contend that the defendants, Bullock, E.T. Turner, Hill, Holmes, Mathews, Ellis, Langford, D. Kriigel, Pearson, Burney, Everett, Angelone, District of Columbia, Federal Bureau of Prisons used retaliation and retalitory tactics toward the plaintiff for filing grievances for the denial of adequate medical care, denial of access to the Courts, Religious discrimination.

### THIRTEENTH CAUSE OF ACTION

L.   THE INTENTIONAL SUBJECTING THE PLAINTIFF TO
     THE CONSTANT ILLUMINATION 24 HOURS PER DAY
     WHILE INSIDE THE CELL WAS CRUEL AND UNUSUAL
     PUNISHMENT

155. Paragraph 1-155 is being incorporated by reference as re-alledged as re-stated:

156. Plaintiff, states that the defendants District of Columbia, Angelone, Pearson, Burney, Everett, Willis, Johnson, Flemming, Washing-ton, York, Morris, Patterson, E.T. Turner, Taylor, and all other defendants mentioned in the instant complaint has subjecting the plain-tiff to crual and Unusual Punishment in violation of the Eighth Amend-ment.

157. Plaintiff, asserts and contends that the defendants had since January 28, 1999 untill October 26th, 2001. Plaintiff has been sub-jected to the constant bright light, inside the assigned cell which has caused the plaintiff to have too have his eye's examined every (90) Ninty days because his vision deteriates at an alarming rate causing plaintiff to need new prescription eye glasses every (90) ninty days.

158. Plaintiff contends that because of the defendants subjecting plaintiff intentionally to the constant illumination of bright light inside his cell plaintiff sufferes from severe eye problems, Sleeping

(  44  ) ___/ CONTINUED ON NEXT PAGE .......

## FOURTEENTH CAUSE OF ACTION

N.    DENIAL OF RIGHT TO REFUSE A (MANTOUX) SKIN
      TEST (PPD TEST) FOR TUBERCULOSIS (TB) BASED
      ON PLAINTIFF'S RELIGIOUS BELIEF AND WHILE
      FASTING DURING THE MONTH OF RAHMADAN

159.    Paragraph 1-158 are being incorporated by reference as re-alleged
and re-stated.

160.    Plaintiff is a practicing Sunni Muslim and has been Muslim for
the past Forty two Years and since being transfered to the Sussex II
State Prison plaintiff was being forced under duress to place his arm
outside a door slot designed to feed Prisoners while locked inside the
cell and submitt to a (Mantoux) skin test (PPD) which is allege to be
designed to detect whether the inmate is infected with the bacterium
that causes tuberculosis.

161.    On numerous occations while being forced to submitt to this this
test it was during the annual lock down which was performed by the
Sussex II State Prison every ninty days,  However the (Mantoux) (PPD)
test is only given once a year and the Plaintiff informed the Physicians
Assistant (Ms. L. Ellis) that the test was only given every twelve
months at which time I was threatened with being placed in restrictive
confinement known as Tuberculin Hold ("TB Hold) for one year futhermore
Plaintiff have a right not to be subjected to crual and Unusual Punish-
ment by being forced to place his are out a whole in the door and be
injected with needles that could break of in the plaintiff's arm.

162. Futhermore, the plaintff was forced under duress and threats by
Ms. Ellis to submitt to these shots which was pre-made meaning they
were already filled with a substance and not in a bottle.

163.    Plaintiff refused to submitt to the skin test on several occa-
tions asserting his First Amendment right to excercise his religious
belief and view that the body is a Holy Temple of Allah which must not
be defiled or contaminated by any form of artificial chemical injec-
tions or drugs. This is an absolute value, and tenent and true test of
a Muslim commitment to his faith and is the extent to which he lives
by this principle and the  Practice of Prophet Muhammad and the Quran
Allahs word.

## FACTS

### HISTORY OF THE SUSSEX II STATE PRISON

(1).   The Sussex II State Prison is a Maximum Security Prison in
        Waverly, Virginia.

(2).   Sussex II State Prison is one of the Defendants in this
        complaint named as the Virginia Defendants the Sussex II
        Prison is operated by the Virginia Department of Corrections
        and by the Defendants through out it's agents including but
        not limited to defendants Angelone, Pearson, Burney, Morris,
        Flemming, Johnson, Everett, and  all it's employee's named

        , herein this instant complaint are the Virginia Defendants.

(3).   The Sussex II State Prison was built on or about 1998.

(4).   The terms on which the Virginia Department of Corrections,
        defendants purport to exercise custodial Authority over
        Plaintiff are set out in a contract agreed to by the
        defendants District of Columbia Department of Corrections
        and the defendnats Virginia Department of Corrections which
        was entered into on or about the 26th day of August, 1998,
        By and between the Common Wealth of Virginia Department of
        Corrections acting by and through the State of Virginia
        Legislature.

(5).   This contract was entered into for the benefit of both the
        defendants, District of Columbia Department of Corrections
        and the Virginia Department of Corrections and the inmates
        from the District of Columbia.

(6)    In the contract, the District of Columbia Department of
        Corrections has the right to inspect the prison in Waverly,
        Virginia.  In order to determine if the Institution maintains
        the standard of care and Discipline and that all inmates
        therein are treated equitable and at all times remain the duty
        and responsibility to insure that prisoners committed to the

(  46  ) CONTINUED ON NEXT PAGE ........

custody of the District of Columbia Department of Corrections
are held safely in a manner consistent with the rights secured
by the Constitution and other Laws.

VIOLENCE AT THE SUSSEX II STATE PRISON:

(7).    Inmate - on Inmate violence has been a recurring and wide
        spread problem at Sussex II since it received the District
        of Columbia Prisoners in January, 1999.

(8).    On information and belief, at least Six inmates have been
        stabed and several more violently assaulted by correctional
        staff and hospitalized since the facility opened.  Futhermore,
        more than half of the prison guards have no Previous training
        in corrections or Medical experience and several prisoners
        have died from being mis-diagnosed from severe diseas's by
        the medical Department suc as the HIV virus, Hepatitis B,C,
        and Tuberculosis and many, many more.  Prison guards weapons
        are regularly discharged inside the Housing units and the
        Dinning Hall, at inmates endangering a multiude of inmates and
        staff members since the facility opened and began accepting in-
        mates.

(9).    On information and belief over 300 inmates have seperation
        orders from other Prisoners in the Institution.  Sussex II
        defendants and the District of Columbia defendants have
        failed to protect these inmates.

(10).   On information and belief, The Sussex II defendants knowingly
        and un-reasonably disregarded the risk of harm to inmates
        failing to protect them from not only the inmates, but the
        correctional staff members violent assaults as well.

(11).   The use of excessive force by staff and the use fo retaliation
        and retalitory tactic's by staff against inmates has also been
        a wide spread problem since the facility opened along with hold-
        ing inmates in the segregation unit for month's to years and

(  47  ) ___/ CONTINUED ON NEXT PAGE ......

the defendants continued use of bed restraints out of retaliat-
ion untill the inmate obtains Sore's and is often denied medical
treatment.

(12).   On or about January 28, 1999.  The defendants dropped between
two and three canisters of chemical Agents (tear gas) on the
transportation bus filled with D.C. inmate in hull restraints.

(13).   Upon exiting the bus at the Sussex II facility the District
of Columbia prisoners were brutally beaten and tased with
hand held tasers again while in full body restraints, hand-
cuffs, waist chains, and ankle chains.

(14).   Plaintiff was subjected to all the above mentioned crualty
on January 28, 1999 while in full restraints this treatment
was inflicted unprovoked and the defendants were deliberatly
indifferent to the serious medical needs after thier attack
on the plaintiff and the other inmates.

(15).   On personal knowledge several of the District of Columbia
Department of Corrections officers and Supervisors and the
Virginia Department of Corrections Officers and thier supervisors
were present during the above mentioned incidents of gasing,
tasing, and un-reasonable beatings and all other assaults
set out in paragraph (59-72) and thereby accepted, approved
and ratified by the actions of the Sussex II State Prison
Correctional Staff members.

(16).   On information and belief neither the county of Waverly,
Virginia Police Department nor any other Virginia Law
enforcement agency has investigated the use of force by
staff against inmates on January 28, 1999.

(17).   EXHAUSTION OF ADMINISTRATIVE REMEDIES:

(18).   The exhaustion of all Administrative Remedies has been exhausted
concerning all incidents mentioned in this instant Complaint.

RELIEF REQUESTED

WHEREFORE, the Plaintiff request that this Honorable Court Grant the
Plaintiff the Following relief:

A.    Issue a declaratory judgement stating that:

1.    The District of columbia defendants and the Virginia Department of
Corrections violated the Plaintiff's First Amendment Rights guaranteed
under the United States Constitution by forcing Plaintiff under duress,
threats of Punishment and the undo burden of chosing between his reli-
gion and the Virginia State Grooming Proceedure pursuant to 864.  Which
stated that New requirements for hair length and style for (Convicted)
Virginia State Prisoners, this policy required that all facial hair
worn by male Prisoners be removed and if not willingly then by force,
the Plaintiff is a Practicing Sunni Muslim and it is required that I
(grow the Beard and trim the mustach) as well as if I have hair on the
top of my head I should grow it.  The Virginia State Grooming Policy
placed a undo burden on my religious belief and practice and to shave
my beard is committing a grave sin against Allah and the teaching of
the Sunni of Prophet Muhammad (SAWS) and renders me a dis-beliver, The
actions of the defendants Angelone, Pearson, Burney, Everett, Williams
White, Turner, Morris, Flemming, Bullock, E.T. Turner, Dailey (a.k.a.)
Muhammed, Thomas, Rollins, Distirct of Columbia, Washington, York,
United States of America, Federal Bureau of Prisons, Mathews, Clark,
all violated the plaintiff's First Amendment rights to the United
States Constitution.

2.    The defendants Angelone, Pearson, Burney, Everett, White, District
of Columbia, Washington, York, Willis, Morris, Flemming, Johnson,
Federal Bureau of Prisons, Gonzalez, United States of America, Rollins,
White, all failed or sat by idly while the District of columbia Prisoners
rights were being violated and all had a independent duty to provide
care, safety,treatment, rehabilitation, reformation and to take action
to curb or prevent the intentional and discriminatory practice of
denying out of deliberate indifference the right for the plaintiff to
practice his religious belief and tenents according to the tenents of

(  49  ) __/ CONTINUED ON NEXT PAGE .......

Islam every male muslim is required to attend the (Jum'ah) Friday
service and not to do so renders one a disbeliever and is a sin
the defendants denied the plaintiff and all other muslims the right
to attend (Jum'ah) service out of deliberate indifference regardless
of the fact that to place the plaintiff under such a undo burden and
forcing him to sin against (Allah) and his Prophets (Sunni) under duress
futhermore, the defendants intentionally denied the plaintiff and all
other muslims at Sussex the opportunity to observe the Id-ul-adha cele-
bration marking the End of Rahmadan,  Also, forcing the (Sunni muslim)
Community to (Fast during the Month of Rahmadan) with the (Nation of
Islam) according to thier non-muslim dietary requirements of beans
and to begin the fast and end the fast according to thier requirements
which are totally different from the Islamic religion and the Sunna of
the Rasool Prophet Muhammed in violation of Plaintiff's First Amendment
right to Freedoom of religion and Religious Persecution.

3.   The Physical, and verbal abuse and the derect denial of adequate
medical care by the defendants District of Columbia, Federal Bureau of
Prisons, Taylor, York, Clark, and all the Virginia defendnats mentioned
in this instant complaint from the Virginia department of Corrections
staff and officials have all violated plaintiff's rights to refuse
medication and amounted to an assault under the Eighth Amendment to
the United States Constitution and the unprovoked beating also ammounted
to an assault and Battery under the law for the unnessassary use of
force with tasers and tear gas.

4.   The defendants also violated the plaintiff's Basic Human rights
by not allowing the plaintiff to atleast call the Hospital before
his biological Mother passed away which this denial was done out of
retaliation and deliberate indifference to plaintiff basic human needs
which is in violation of the Virginia Department of Corrections own
Policy and proceedure which states (I have the right to expect that
as a human being I will be treated respectfully, impartially, and fairly
by all personell) I have sworn Affidavits from other inmats who were
allowed to communicate with sick or ill family members by staff at the
Sussex II State Prison.

(   50  ) __/  CONTINUED ON NEXT PAGE ........

CLAIMS FOR RELIEF :

1.  The actions or inactions of defendants District of Columbia, Williams,
District of Columbia Department of Corrections, Washington, York, Clark,
Taylor, Patterson, Gilmore, Angelone, Morris, Flemming, Pearson, Burney,
Willis, are all either District of Columbia Defendants or agents of these
defendants under contract, mainly the District of Columbia has the in-
dependent responsibility not to sit by idly while thier prisoners rights
are violated by the Virginia Defendants whom the District of Columbia
placed the District of Columbia inmates in virginia's Physical custody
pursuant to D.C. Code § 24-441. and 24-442, and 24 -101 (c)(1)(b)(a)(2)
(a)(3)(a)(f) that the District of columbia Department of Corrections be
responsibile for the safekeeping, treatment, care, custody, rehabilitation,
reformation instruction, dicipline and not be subjected to crual and Un-
usual Punishment in violation of the First, Eighth, and Fourteenth Amend-
ment to the United states Constitution.

2.  The actions of Thomas, Gilliam, Brown, Clark, Liptrot, Hews, Ritter,
in using unnecessary Physical force and abuse unprovoked or provocation
towards the Plaintiff constituted the Tort of Assualt and Battery under
the Law.

3.  The actions of Jenkins, Appel, Ellis, Samoria, in using Physical
force to inject the Plaintiff with an unknown substance against his
will by injection against the Plaintiff's religious belief and practice
constituted an assault under the Law.

4.  The actions of Thomas, Gilliam, Brown, Liptrot, Hews, Clark, Ritter,
Cain, District of Columbia, Williams, Washington, York, Willis, Taylor,
Angelone, Pearson, Burney, Jenkins, Morris, Flemming, Bullock, Johnson,
for either using or allowing the use of Physical force to shave inmates
with ligitamate religious issues with shaving thier beards and hair under
duress and the physical force inflicted by staff with out provocation
and for failing to intervene to prevent the misuse of force and assaults
by correctional staff members which were done maliciously and sadistically
and in voilation of the constitution to Crual and Unusual Punishment
under the Eighth Amendment to the United States Constitution.

(  51  )  __/ CONTINUED ON NEXT PAGE ......

5.   The actions of defendants Angelone, Pearson, Burney, White, E.T.
Turner, Patterson, Williams, Flemming, Johnson, Everett, Gonzalez,
Federal Bureau of Prison, Willis, Rollins, York,
M.C.I. World Comm, in the arbitrary and intentional extortion of the
District of Columbia inmates being housed at the Sussex II State Prison
and their family members by forcing family members and friends to sign
consent forms to pay for over charged fee's for collect call's which
ran any where from Ten (10) to Fifteen (15) dollers for Fifteen minutes
where the District of Columbia prisoners were being charge only a set
rate of one doller per call which was also suppose to follow the district
of Columbia Prisoners to any contract facility transfered too by the
District of Columbia,  furthermore the defendants M.C.I. World Comm
placed retalitory block's unauthorized on inmates family members phone's
which caused undo hardship , mental and Emotional strain on prisoners
children and caused plaintiff not to be able to call to his mothers
house during her illness or to receive information as to her health
because that was where all family members stayed untill she passed away
and plaintiff was denied by all the above Sussex II Staff member when
plaintiff's daughter called and informed staff that Plaintiff's mother
was hospitalized and requested they inform the plaintiff to call home
these actions were done out of deliberate indifference, retaliation,
for the plaintiff filing grievances and subjected plaintiff to crual
and Unusual Punishment in violation of the eight Amendment to the United
States Constitution.

6.   The actions of E.T. Turner, Bullock, Mathews, white, Pearson,
Burney, District of Columbia, Willis, Patterson, Federal Bureau of
Prison, Williams, Angelone, Burney, Morris, Flemming, Johnson, Everett,
for denying Plaintiff the same opportunity's any other prisoner would
have incarcerated in the state of Virginia or that the plaintiff would
have received in Lorton, or the District of Columbia Plaintiff was denied
the right to call family members or the hospital in a emergency situation
as promulgated in DOP for the Virginia Department of Corrections for
(Emergency Telephone calls) which has been verified by staff caused the
Plaintiff too suffer Mentally and Emotionally as well as caused the
Plaintiff's family members to also suffer because I am my mothers oldest

oldest child. I was the benificiary for my mothers Insurance Policy and my younger siblings needed me to call to have Power of Attorney turned over to my Sister in order to establish that my mother would be properly buried and that it would be paid for therefore the actions of the defendants in not allowing me the same opporunity as any other simularly situated inmate (And in the Sussex II State Prison Inmate Orientation manual Page (3) INMATES RIGHTS AND RESPONSIBILITYS

1.  I have the right to expect that as a human being I will be treated respectfully, impartially, and fairly by all personnel.

5.  I have the right to visit and correspond with family members and friends

the actions of the defendants were committed out of retaliation and deliberate indifference to cause mental and emotional pain and suffering and denied the plaintiff the same opportunities as other prisoners and equal treatment in violation of plaintiff's Due Process rights in violation of the Eighth, Fourteenth Amendment rights to Crual and Unusual Punishment.

7.  The actions of Langford, Hill, Holmes, for the intentional denial to allow the plaintiff to Practice his religious tenents without undo presure and burdens of retaliation or intimidation. The defendants Langford, Hill, and Holmes Personally approached the Plaintiff and informed him that he could not pray while at work inside the Kitchen where he was assigned by Staff for a total of (8) eight to (15) hours at times per day often doing over time by force and under duress and not being paid for these hours, The defendant Langford told the plaintiff that if he wanted to pray that he should pray like she did as a Christian, defendant Langford, Holmes, Hill, threatened plaintiff with Loss of canteen, Loss of Visits, and Segregation if he was caught Praying (making Salat) while in the Kitchen these defendants also subjected the plaintiff to verbal abuse and resorted to retaliation and retalitory tactic's when the plaintiff filed grievance concerning the denial out of deliberate indifference to the plaintiff's serious religious beliefs the defendants violated the plaintiff religious belief by the discriminatory actions and statments and the denial

( 53 )  __/ CONTINUED ON NEXT PAGE ......

of allowing the Plaintiff to pray in violation of the Plaintiff's First
Amendment Right to the Freedom to exercise his religious beliefs with-
out undo Burden.

8.   The Failure of the defendants District of Columbia, Federal Bureau of
Prison, United States of America, Willis, Angelone, Pearson, Patterson,
White, Burney, Morris, Gilmore, Flemming, Clark, Everett, Rollins, Hill,
Holmes, Johnson, Harris, Langford, to take disciplinary actions or other
actions and not sit idly by or curb the known Patteren of religious dis-
crimination, verbal assaults, threats, retaliation, Mental and Physical
abuse, Sexual Harrasment, and assault by correctional staff, denial of
medical care and treatment for serious medical needs, Denial of Dental
care. The direct Denial to screen and treat Prisoners with Infectious
Diseases which were being transmitted to other Prisoners thru food pre-
paration because there was no physical or tests done before being assig-
ned to the Food Service, Barber Jobs, or Laundry dept's the all of the
above defendants have independant duties to provide a safe environment
free from infectious disease, safety hazards preventable by health care
safety these defendants are in violation of the Eighth, First, Sixth,
Fourtheenth Amendments to the United States Constitution by not securing
a safe environment free of Life threating diseases.

9.   The actions of defendnats Dailey (a.k.a.) Mrs. Muhammad, Coakley,
Kriigel, Houston, for refusing to inform or notify the Plaintiff that
he was Scheduled to attend the Law Library, intentionally attempting
to hinder access to the courts arbitrarily out of deliberate indifference
to plaintiff's serious need of the use of the Law Library while he was
litigating several Civil actions and Seeking Criminal Post relief which
because of these defendants actions was denied for failure to Prosecute
or dismissed the defendants also retaliated against the Plaintiff for
filing grievance for thier actions of denying access to the Law Library
in violation of Plaintiff's Sixth Amendment right to Petition the Court
and access to the Court in violation of the United States Constitution.

10.  The actions of Dr. Ulep, Taylor, District of Columbia, Federal
Bureau of Prisons, United States of America, Washington, Williams,
Gilmore, Willis, Patterson, York, Gonzalez, Pearson, Burney, Everett,
White, for siting by idly while Plaintiff was being denied adequate
medical care for a Pre-existing lower Back injury which was exacerbated
by the defendants intentional assignment of the placement on a top bunk,
confiscation of his medically prescribed back brace, and the denial to
replace this Prothesis equipment when confiscated by a staff member at
Sussex II State Prison futhermore the defendants denial of follow -up
examinations and medical care in violation of the Eighth Amendment to
the United States Constitution.

B.  Award Compensatory damages in the following amounts:

1.  7.5 Billion dollars jointly and severally against defendants
    District of Columbia, Federal Bureau of Prisons, Gonzalez,
    United States of America, Washington, Williams, York, Patterson,
    Angelone, Morris, Flemming, Gilmore, Morris, Johnson, E.T. Turner,
    Langford, Hill, Holmes, Burney, Everett, for sitting by idly while
    Plaintiff's First Amendment Rights to Practice his religious tenents
    without undo burdens to shave his beard by force sinning against
    (Allah) and the Sunna of his Prophet Muhammad causing the injuries
    of Mental and emotional distress by this burden being placed on
    Plaintiff to obey (Allah) or the Virginia Bureau of Prisons policy
    and sanctions in violation of Plaintiff First Amendment rights under
    the United States Constitution.

2.  $ 2 Billion dollars jointly and severally against defendants Hill,
    Holmes, Lanford, Pearson, Burney, Everett, Burney, Gilmore, District
    of Columbia, Federal Bureau of Prisons, United States of America,
    Gonzalez for abitrarily denying Plaintiff the right with threats
    Segregation, Loss of Pay verbal abuse, if caught (praying) making
    (Salat) while at work in food service where he was often working
    over time with no pay under duress caused the direct injury of
    Mental and Emotional distress and a undo Burden upon the Plaintiff's
    religious belief and tenents, the use of retaliation by the defendants
    grievances was filed concerning these issues which is obligatory

upon the Plaintiff to make (Salat) five times a day the injuries
from the defendants violated Plaintiff's First Amendment Right to
the Freedom of Religion under the United States Constitution.

3.   $ 3 Billion Dollars jointly and severely against defendants District
     of Columbia, United States of America, Federal Bureau of Prisons
     William, Washington, Gonzalez, Taylor, Patterson, Gilmore, Clark,
     York, Willis, for abandoning the Plaintiff and all simulary sit-
     uated Prisoners being housed at the Sussex II State Prison under
     contract between the District of Columbia Department of Corrections
     and the Virginia Department of Corrections made August 26, 1998.
     and breached thier duties to provide proper treatment, care, safety,
     reformation, rehabilitation, as provided Pursuant to D.C. Code §
     24-442 and Title D.C. Code 24-1001 to 1002 these defendants ignored
     thier independent reposibility not to sit idly by as thier Prisoners
     in the custody of the Virginia authorities and agents violated thier
     Human Rights as well as thier Constitutional Rights under the First,
     Eighth, Fourteenth, and Sixth Amendments to the United States Con-
     stitution.

4.   $ 35 Million dollars jointly and severally against defendants Burney,
     Angelone, Pearson, Everett for the Un-waranted punishment of being
     placed in administrative lock down for  punitive Punishment without
     a disciplinary report being written or being takan before a adjust-
     ment board for a hearing in violation of Plaintiff's Due process
     rights and Equal Protection to the Fourteenth Amendment these actions
     caused the Plaintiff to loss Priviledges of canteen, visits, Phone,
     etc with Due Process of Law.

5.   300 Million Dollars jointly and severelly against defendants Taylor,
     Ulep, Ellis, Samoria, Jenkins, for the deliberate denial and failure
     to provide adequate medical treatment and care for Plaintiff's high
     Blood Presure and High Cholestorol which went un-treated from 1999
     untill 2001 which the defendants were well aware of and refused to
     treat the Plaintiff for this choronic illness.  Futhermore the
     defendants injected the Plaintiff against his will after refussal
     to be injected to a injection of a pre-arranged syringes containing

a substance which was alleged to have been a (Hepatitis B vacine) which was not authorized by the District of Columbia in the contract signed on or about August 26, 1998 between the District of Columbia and State of Virginia Department of Corrections this injection upon entering the Plaintiff's system immediatly caused an allergic re-action of his Blood Presure going up, Headache, Rapid Heart Beat, dizzyness, Plaintiff clearly informed the defendants that he did not wish to take any injections or medication untill being examined by a doctor because of the plaintiff allergic reaction to certain medications and food Products and his religious belief of not pol-uting his body with Pork products of by products against his reli-gious tenents the actions of the defendants caused Plaintff physical, mental, Emotional injuries in violation of Plaintiff's Eighth Amend-ment right to Crual and Unusual punishment and the actions of these Officers and medical staff members constituted an assualt in violation of the United States Constitution.

6.  $1.3 Million Dollars jointly and severely against defendants Brown, Hews, Ritter, Thomas, Liptrot, Gillian, Clark, for the Physical and emotional injuries sustained as a result of the Plaintiff being unn-ecessary beaten, tased, and gased by the above named defendants in violation of the Plaintiff's Constitutional right to Equal Protection and Due Process under the Fourteenth Amendmant.

7.  $ 200 Million Dollars jointly and Severely against defendnats Dailey (aka) Mrs. Muhammed, Coakely, Houston, Carlton, Kriigel, Bullock, Mathews, Gilmore, White, J. Turner for the intentional hindurance to access to the Courts and acess to the Law Library out of the deliberate indifference to the Plaintiff's need to litigate his Pending Civil and Criminal actions and caused these actions to be dismissed for failure to Prosecute these actions were in violation of the Plaintiff's Sixth Amendment right to petition the Courts under the United States Constitution.

(  57  ) __/ CONTINUED ON NEXT PAGE .......

C.    AWARD PUNITIVE AND EXEMPLARY DAMAGES IN THE FOLLOWING AMOUNTS:

1.    $ 900,000 Thousand dollars each against defendants District of
      Columbia, Federal Bureau of Prisons, United States of America,
      Washington, Williams, York, Clark, Gilmore, Gonzalez, Taylor,

2.    $ 800,000 Thousnad dollars each against defendants Angelone,
      Pearson, Burney, Everett, Johnson, Flemming, Mathews, White,
      Rollins, Morris, E.T. Turner, J. Turner, Gilmore, Bullock

3.    $ 700,000 Thousand dollars each against defendants Holmes, Hill,
      Langford, Rollins,

4.    $ 600,000 Thousand dollars each against defendants Dailey (aka)
      Mrs. Muhammad, Coakely, Houston, Hews, Clark, Ritter, Brown,
      Gillian, Thomas, Liptrot, Harrell, Jenkins, K. Turner, Harris,
      Williams, Cuccio, Carlton.

5.    $ 500,000 Thousand dollars each against M.C.I. World Comm,

6.    $ 1.3 Million dollars each against Ulep, Samoria, Ellis, Appel,

      GRANT such other relief the Court may appear that the Plaintiff
      is entitled.

Respectfully Submitted

Name _Mr. Darnell Stanley_
      Darnell Stanley - Pro- Se
      No. 08619-007

Date _12/1/05_

( 58 )

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


Darnell Stanley - Pro-se                    :
No. 08619-007
F.C.I. Allenwood                            :
P.O. Box 2000
White Deer, PA  17887                              CIVIL COMPLAINT

                                            :       Case No. _____

        v.                                  :

UNITED STATES OF AMERICA, et,al.                    Jury Trial Demanded
DISTRICT OF COLUMBIA, et,al.
THE VIRGINIA DEPARTMENT OF CORRECTIONS,et,al.
ANTHONY WILLIAMS, et,al.                    :
ALBERTO GONZALEZ, et,al.
M.C.I. WORLD COMM, INC, et,al.
JAMES S. GILMORE III, et,al.


MOTION FOR DUPLICATION SERVICE
PURSUANT TO SECTION 28 U.S.C. § 1915
(a) - (d)
_____

  Comes now, Plaintiff Darnell Stanley - Pro-se, respectfully request
this Court to Duplicate the enclosed Civil Rights Complaint being
filed pursuant to 28 U.S.C. § 1983 for the violations of Plaintiff's
First Amendment rights to Practice his religious tenents in accord
with the Islamic religious practice with out undo burdens palced on
the plaintiff also a number of Eighth Amendment, Sixth Amendment
rights in the direct denial of adequate medical care and the denial
of access to the courts all in violation of the United States Cons-
titution.


  The Plaintiff request that the defendnats be served with a copy
of the complaint and a Summons which the plaintiff respectfully
request that the United States Marshal serve Pursuant to (CJPR) -
Rule (4)(c)(2) Civil Judicial Proceedure Rules for the following
reasons:

1.    Plaintiff states that he is presently incarcerated at the F.C.I.
Allenwood facilityin White Deer, Pa 17887.

2.    Plaintiff asserts that he is indigent and can not affrd the re-
quired number of individual copy's of the complaint required by the
court Pursuant to the Federal Civil Judicial Proceedure Rules (4)(c)
(1) which require that each defendant receive and be served a copy of
the complaint and summons.

3.    I declare under the penalty of Purjury that I am employed at this
Federal Institution and that I am Paid (Twenty four cents) .24 cents
per month.

4.    I have requested that this Institution assist me in obtaining
copys and was refused on November 17, 2005 by counselor Moser a
employee of the Federal Bureau of Prisons Incolosed is a copy of
his refusal.

For the forgoing reasons stated above the Plaintiff respectfully
request that the motion for Duplication Service be Granted Pursuant
to Section 28 U.S.C. Section 1915 (a)-(d).

Respectfully Submitted

Darnell Stanley-Pro-se
F.C.I. Allenwood
P.O. Box 2000
White Deer, Pa  17887

( 2 )

UNICOR FEDERAL PRISON INDUSTRIES, INC
LEAVENWORTH, KANSAS

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Mr. Moser, Unit 3 B Counselor | 11/14/05 |
| FROM: Darnell Stanley | REGISTER NO.: 08619-007 |
| WORK ASSIGNMENT: P. M. Compound | UNIT: 3-B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I have a 42 U.S.C. 1983 Civil Complaint with (52) Fifty two defendants, Who each has to be served with a copy each of the Complaint and Summons Pursuant to the Federal Civil Judicial Procedure Rule (Rule 4 (c)(1).

I am requesting (52) Fifty Two Seperate copies of this Civil complaint one for each defendant.

I am indigent and cannot afford to make copies at this time.

(Do not write below this line)

DISPOSITION:

You spent 99.26 in commissary since 10-18-05
You are not considered Indigent.

06 0038
**FILED**

JAN 1 1 2006

**NANCY MAYER WHITTINGTON, CLERK**
U.S. DISTRICT COURT

| Signature Staff Member | Date |
|---|---|
| | 11-17-05 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP) This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94